**UNITED STATES of America, Appellee,**

v.

**Stephen J. STAULA, Defendant,
Appellant.**

No. 95–1882.

United States Court of Appeals,
First Circuit.

Heard March 5, 1996.

Decided March 29, 1996.

599

Martin K. Leppo, Randolph, MA, for appellant.

Todd E. Newhouse, Assistant United States Attorney, with whom Donald K. Stern,

United States Attorney, was on brief, Boston, MA, for appellee.

Before SELYA, STAHL and LYNCH, Circuit Judges.

SELYA, Circuit Judge.

A federal grand jury charged defendant-appellant Stephen J. Staula, in relevant part, with being a felon in possession of a firearm (count 1) and ammunition (count 2), and with receiving a stolen firearm (count 3). *See* 18 U.S.C. § 922(g)(1), (j). Following a five-day trial, the petit jury convicted the appellant on all three counts.[1] The court imposed an incarcerative sentence.

In this appeal, Staula labors to convince us that the district court thrice erred in denying his motions to (i) dismiss the indictment for want of a speedy trial, (ii) suppress evidence, and (iii) direct judgment of acquittal. We are not persuaded that any error occurred.

## I

### Background

We sketch the facts in the light most hospitable to the jury's verdict. *See United States v. Ortiz*, 966 F.2d 707, 711 (1st Cir. 1992), *cert. denied*, 506 U.S. 1063, 113 S.Ct. 1005, 122 L.Ed.2d 154 (1993).

During the early evening of September 13, 1993, officer David Tyrie of the Hanover police department stopped a pickup truck for patent violations of the state motor vehicle code. *See* Mass.Gen.L. ch. 90, § 6 (requiring, *inter alia*, a front license plate on every commercial vehicle); *id.* § 7 (requiring, *inter alia*, operable brake lights). The appellant proved to be the driver and registered owner of the ill-equipped vehicle. A female companion named Myriah Morse, later to become Staula's wife, occupied the passenger's seat.

Tyrie testified that he smelled burnt marijuana when he first approached the driver's side window to demand a registration certificate and operator's license. He then retreated to his cruiser with the documents and called for backup. After two other officers arrived, Tyrie revisited the vehicle and in-

---

1. The indictment also charged the appellant with two drug-related offenses. The jury acquitted him on these counts and we eschew any further reference to them.

quired whether the occupants had been smoking marijuana. He also asked whether they had any marijuana in the truck. Both Staula and Morse answered the queries in the negative.

Apparently unconvinced by these disclaimers and by Morse's volunteered statement that she recently had burned incense in the vehicle, Tyrie sought the appellant's consent to search the truck. After having been rebuffed, he ordered the appellant to alight, searched the driver's side of the cab (discovering no contraband), directed Morse to alight, searched the other side of the cab, and found two bags of marijuana behind the passenger's seat. Arrests followed all around.

Prior to impounding the vehicle, Tyrie conducted a standard inventory search and discovered a fully loaded handgun (which had been reported as stolen in November of 1992) and a box of ammunition behind the passenger's seat. The gun and ammunition were located within inches of the marijuana, and within easy reach of the driver. The weapon's hammer was cocked.

At trial, the appellant built his defense around the assertion that he lacked any knowledge of the drugs and weaponry. To this end, he presented the testimony of a friend, Ralph Nason, who claimed that he purchased the marijuana and, in a separate transaction, accepted the gun and ammunition from an acquaintance; borrowed the pickup truck from Staula on Saturday, September 11; placed the described articles in the vehicle; and then drove to New Hampshire. Nason supposedly remained there (with the truck and the contraband) until Sunday evening. He claims to have returned the truck to the appellant on Monday (only minutes before Tyrie made the traffic stop).

## II

### Analysis

#### A.

#### The Speedy Trial Act

The appellant's principal claim is that the prosecution did not bring him to trial within the time frame prescribed by the Speedy Trial Act, 18 U.S.C. §§ 3161–3174 (the Act),

and concomitantly, that the district court therefore should have dismissed the indictment. In this case, the speedy trial claim involves a straight question of law engendering de novo review. *See United States v. Rodriguez*, 63 F.3d 1159, 1162 (1st Cir.), *cert. denied*, —— U.S. ——, 116 S.Ct. 681, 133 L.Ed.2d 529 (1995); *see also United States v. Gallo*, 20 F.3d 7, 11 (1st Cir.1994) (explaining that pure questions of law demand plenary appellate review).

The baseline premise of the Act is its requirement, embodied in 18 U.S.C. § 3161(c)(1), that a defendant is entitled to be tried within seventy days of his indictment or initial appearance before a judicial officer (whichever first occurs). *See United States v. Hastings*, 847 F.2d 920, 924 (1st Cir.), *cert. denied*, 488 U.S. 925, 109 S.Ct. 308, 102 L.Ed.2d 327 (1988). The premise cannot be taken literally, however, for the Act contemplates that certain periods of time will be excluded from the computation. *See* 18 U.S.C. § 3161(h). An inquiring court therefore must follow a two-step process. First, the court must do the basic mathematics and determine the aggregate time elapsed awaiting trial. Second, it must determine how many days should be excluded from that ultimate sum. *See United States v. Sepulveda*, 15 F.3d 1161, 1193 (1st Cir.1993), *cert. denied*, —— U.S. ——, 114 S.Ct. 2714, 129 L.Ed.2d 840 (1994).

Here, the salient dates and events are essentially undisputed. The speedy trial clock began to tick on October 26, 1994 (the date of arraignment). *See id.* (describing date of inception of speedy trial period). The clock stopped ticking on March 16, 1995 (the date on which the appellant filed his motion to dismiss under the Act). *See United States v. Connor*, 926 F.2d 81, 84 (1st Cir.1991) (holding that "a motion for dismissal [under the Act] is effective only for periods of time which antedate the filing of the motion"). Excluding March 16, *see Rodriguez*, 63 F.3d at 1163–64 (reiterating that the date on which a motion is filed is not counted), the aggregate period amounts to 140 days.

We now take the second step in the pavane. This step begins and ends with the

appellant's motion to suppress. The appellant served this motion on November 17, 1994, and simultaneously requested an evidentiary hearing. The government filed an opposition. The magistrate judge assigned to hear pending motions reserved the suppression motion for the district judge. On March 22, 1995, Judge Tauro discussed the motion with counsel but made no ruling. On the day trial began (April 18, 1995), the judge denied the motion from the bench without convening an evidentiary hearing. He also denied the motion to dismiss primarily on the basis that the period between the filing of the suppression motion (November 17, 1994) and what he termed the "preliminary hearing" thereon (March 22, 1995) constituted excludable time under the Act.

■ The appellant challenges this ruling. He contends that the brief exchange on March 22 did not comprise a "hearing" for purposes of the Act. The point is significant because the Act provides that delay connected with a pending pretrial motion, "from the filing of the motion through the conclusion of the hearing on, or other prompt disposition of, such motion," is excludable. 18 U.S.C. § 3161(h)(1)(F). For motions that require a hearing,[2] this subsection excludes the time between the filing of the motion and the hearing on that motion, even if the delay is overlong, inexplicable, or unreasonable. *See Henderson v. United States*, 476 U.S. 321, 329–30, 106 S.Ct. 1871, 1876–77, 90 L.Ed.2d 299 (1986); *United States v. Johnson*, 29 F.3d 940, 942–43 (5th Cir.1994); *United States v. Clymer*, 25 F.3d 824, 830–31 (9th Cir.1994); *United States v. Noone*, 913 F.2d 20, 27 n. 10 (1st Cir.1990), *cert. denied*, 500 U.S. 906, 111 S.Ct. 1686, 114 L.Ed.2d 81 (1991). Thus, if the March 22 encounter comprises a hearing within the purview of the Act, the district court appropriately excluded all the time accrued after November 17, 1994.

■ The Act itself does not define the term "hearing," and the case law on this point is relatively sparse. It is clear, however, that due process rarely demands full evidentiary hearings, *see Doyle v. Secretary of HHS*, 848 F.2d 296, 302 (1st Cir.1988) (collecting cases), and we are confident that something less than a full evidentiary hearing will suffice to engage the gears of § 3161(h)(1)(F). Two recent Fifth Circuit cases are instructive. In *United States v. Tannehill*, 49 F.3d 1049 (5th Cir.), *cert. denied*, — U.S. —, 116 S.Ct. 167, 133 L.Ed.2d 109 (1995), the court declared that, at a minimum, "the term includes a situation in which the district court hears argument of counsel and considers [those arguments] prior to making its ruling." *Id.* at 1053. Utilizing this standard, the court held that a discussion of the merits of the defendant's motion at the outset of trial constituted a hearing for purposes of the Act. *See id.*

In *United States v. Grosz*, 76 F.3d 1318 (5th Cir.1996), a brief exchange concerning a pending motion occurred between the district court and counsel for the government (in which defense counsel, although present, did not play a part). *See id.* at 1322–23. Applying the *Tannehill* standard, the panel found this abbreviated colloquy to be a hearing within the purview of the Act. *See id.* at 1324–25. The court said that a hearing occurs whenever the district judge discusses the merits of a motion with counsel for the party against whom the ruling on the motion is ultimately rendered. *See id.*

In the case at hand, the trial court heard arguments put forward by the appellant's counsel in open court, on the record; questioned him; and gave him the opportunity to highlight salient facts. The court then gave the prosecutor a similar opportunity. In our view, this give-and-take among counsel and the court, notwithstanding its relative brevity, is the essence of what a hearing entails. And, moreover, there was good reason for the exchange: the appellant had requested that the court take evidence, and the court was not in an optimal position to rule upon the appellant's suppression motion until it

**2.** It is often arguable whether a particular motion requires a hearing. *See generally United States v. Tannehill*, 49 F.3d 1049, 1052 n. 4 (5th Cir.), *cert. denied*, — U.S. —, 116 S.Ct. 167, 133 L.Ed.2d 109 (1995). Here, the appellant requested a hearing on his motion, thus acknowledging that one was appropriate. Consequently, we need not discuss the factors that determine whether a given motion "requires" a hearing.

questioned counsel and determined the need for, and the potential efficacy of, an evidentiary hearing.

■ To say more would be to add hues to a rainbow. We hold that a hearing is any on-the-record colloquy in which the district court hears the arguments of counsel and considers those arguments prior to deciding a pending motion. Measured by this yardstick, the proceedings on March 22 constitute a hearing for purposes of 18 U.S.C. § 3161(h)(1)(F). It follows inexorably that the district court properly excluded the entire period from November 17, 1994 through March 22, 1995 (a date beyond the date on which the appellant filed his motion to dismiss).[3] *See Henderson*, 476 U.S. at 330, 106 S.Ct. at 1876–77.

This ruling defenestrates the speedy trial claim. Computing the total time elapsed between the date of the appellant's first appearance and the date on which he filed his motion to dismiss for want of a speedy trial (140 days), and subtracting the portion of that time excludable due to the pendency of the motion to suppress (118 days), it is abundantly clear that trial commenced within the time frame mandated by the Act.

### B.

### *The Motion to Suppress*

The objection to the district court's disposition of the motion to suppress has both substantive and procedural aspects. We discuss them seriatim.

■ **1. *Probable Cause.*** A police officer may effect a warrantless search of the interior of a motor vehicle on a public thoroughfare as long as he has probable cause to believe that the vehicle contains contraband or other evidence of criminal activity. *See, e.g., United States v. Martinez–Molina*, 64 F.3d 719, 726 n. 5 (1st Cir.1995); *United States v. Panitz*, 907 F.2d 1267, 1271 (1st Cir.1990). In this instance, the appellant's asseveration that the police lacked probable

cause for the search elevates hope over reason.

■ In assessing "whether the government has made a sufficient showing of probable cause, a reviewing court must examine the 'totality of the circumstances.'" *United States v. Nocella*, 849 F.2d 33, 39 (1st Cir.1988) (quoting *Illinois v. Gates*, 462 U.S. 213, 230, 103 S.Ct. 2317, 2328, 76 L.Ed.2d 527 (1983)). On appeal, this assessment entails acceptance of the lower court's factual findings unless those findings are clearly erroneous, but necessitates plenary review of the lower court's legal conclusions. *See United States v. Zapata*, 18 F.3d 971, 975 (1st Cir. 1994); *United States v. Rodriguez–Morales*, 929 F.2d 780, 783 (1st Cir.1991), *cert. denied*, 502 U.S. 1030, 112 S.Ct. 868, 116 L.Ed.2d 774 (1992). Moreover, the law recognizes that a vehicle search under this exception may encompass all areas of the vehicle in which the suspected contraband is likely to be found. *See United States v. Maguire*, 918 F.2d 254, 260 (1st Cir.1990), *cert. denied*, 499 U.S. 950, 111 S.Ct. 1421, 113 L.Ed.2d 474 (1991). Applying these principles, it is readily apparent that the court below did not err in finding probable cause and ratifying the search.

■ Tyrie's affidavit asserts unambiguously that he detected an aroma of burnt marijuana when he first approached the pickup truck. The case law is consentient that when a law enforcement officer detects the odor of marijuana emanating from a confined area, such as the passenger compartment of a motor vehicle, that olfactory evidence furnishes the officer with probable cause to conduct a search of the confined area. *See United States v. Johns*, 469 U.S. 478, 482, 105 S.Ct. 881, 884, 83 L.Ed.2d 890 (1985); *United States v. Parker*, 72 F.3d 1444, 1450 (10th Cir.1995); *United States v. French*, 974 F.2d 687, 692 (6th Cir.1992), *cert. denied*, 506 U.S. 1066 & 507 U.S. 978, 113 S.Ct. 1012, 113 S.Ct. 1431, 122 L.Ed.2d 160, 122 L.Ed.2d 798 (1993). Thus, Tyrie had a right to search the entire passenger compartment of the pickup

---

**3.** We join the Fifth Circuit, *see Grosz*, 76 F.3d at 1325 n. 7, in warning that we will not permit either the district court or the prosecution to jerry-build a "hearing" in order to thwart the concinnous operation of the Speedy Trial Act. Here, however, the record contains no hint of such contrivance, and, for that matter, the appellant has levelled no such charge.

truck. *See United States v. Nielsen,* 9 F.3d 1487, 1491 (10th Cir.1993).[4]

■■■ The appellant also assails the second phase of the search (during which Tyrie located the gun and ammunition). That search was lawful for three reasons. First, the extent of a permissible search is often incremental. *See, e.g., United States v. Giannetta,* 909 F.2d 571, 574, 577 (1st Cir. 1990). Here, Tyrie's discovery of the marijuana gave him probable cause to continue to hunt within the passenger compartment for more contraband. *See, e.g., Maguire,* 918 F.2d at 260. Second, the appellant cannot seriously dispute that when Tyrie spied the marijuana, he had probable cause to arrest the truck's occupants. *See, e.g., United States v. Uricoechea–Casallas,* 946 F.2d 162, 166 (1st Cir.1991). Having lawfully arrested the driver in the course of a highway stop, the authorities may search the driver's vehicle for contraband. *See New York v. Belton,* 453 U.S. 454, 460–61, 101 S.Ct. 2860, 2864–65, 69 L.Ed.2d 768 (1981); *United States v. Reyes–Mercado,* 22 F.3d 363, 366 n. 4 (1st Cir.1994). Under this rule, the second phase of Tyrie's search can be justified as incident to a lawful arrest. Third, when a driver is lawfully arrested and thus disabled from continuing his journey, the Constitution permits the police to carry out a routine inventory examination incident to impounding the vehicle. *See Zapata,* 18 F.3d at 978; *United States v. Ramos–Morales,* 981 F.2d 625, 627 (1st Cir.1991), *cert. denied,* 508 U.S. 926, 113 S.Ct. 2384, 124 L.Ed.2d 287 (1993). In this case, the second phase of the search fit comfortably within this integument.

On any of these bases, the gun and ammunition were themselves the fruits of a lawful search and, hence, admissible at trial. Accordingly, the district court did not err in denying the motion to suppress.

**2. *Lack of an Evidentiary Hearing.***
The appellant next berates the trial court for two ostensible procedural blunders: denying him an evidentiary hearing on his motion to suppress and shunning its responsibilities under Fed.R.Crim.P. 12(g). The criticism is unwarranted.

■■■ It is apodictic that a criminal defendant is not entitled, as a matter of right, to an evidentiary hearing on every motion that he deigns to file. *See, e.g., Panitz,* 907 F.2d at 1273; *United States v. Pellerito,* 878 F.2d 1535, 1545 (1st Cir.1989). A hearing is required only if the movant makes a sufficient threshold showing that material facts are in doubt or dispute, and that such facts cannot reliably be resolved on a paper record. *See United States v. Lilly,* 983 F.2d 300, 310–11 (1st Cir.1992); *Panitz,* 907 F.2d at 1273. Most importantly, the defendant must show that there are factual disputes which, if resolved in his favor, would entitle him to the requested relief. *See, e.g., Lilly,* 983 F.2d at 310–11. The district court has considerable discretion in determining the need for, and the utility of, evidentiary hearings, and we will reverse the court's denial of an evidentiary hearing in respect to a motion in a criminal case only for manifest abuse of that discretion. *See id.* at 311.

■■■ In this instance the district court correctly concluded that it would be pointless to convene an evidentiary hearing. The finding of probable cause hinged on Tyrie's statement that he smelled burnt marijuana when he first ventured near the pickup truck. The appellant filed an affidavit in which he stated that Tyrie did not mention the aroma of marijuana until he returned to the vehicle a second time. On this basis, the appellant surmises that Tyrie's reference to marijuana was pretextual, that is, that Tyrie did not actually detect the fragrance of marijuana, but, rather, having learned of the appellant's

---

4. The appellant's attempt to dilute the force of these cases is disingenuous. He cites other decisions suggesting that the existence of probable cause to search the passenger compartment of a vehicle does not necessarily confer a right to search the trunk. *See, e.g., Nielsen,* 9 F.3d at 1491. Expanding on this theme, he then posits that Tyrie could not search behind the seats in the pickup truck. The fly in this ointment is that

the space behind the seats, in which Tyrie found the marijuana, is part of the truck's passenger area, and no amount of wordplay can change that fact. Since the aroma of marijuana wafted from the passenger area, that region became fair game for a drug search under the automobile exception to the warrant requirement. *See United States v. Ross,* 456 U.S. 798, 825, 102 S.Ct. 2157, 2173, 72 L.Ed.2d 572 (1982).

**604**

criminal record when he checked the appellant's license and registration, proceeded to concoct the story to justify his desire to search the truck. In the appellant's view, an evidentiary hearing would have smoked out the truth.

The asseveration is profoundly flawed. Even accepting the substance of the appellant's affidavit as true, the affidavit contains no facts that contradict the officer's direct statement that he smelled burnt marijuana on his initial approach to the truck. Whether Tyrie mentioned the marijuana when he first detected the odor is hardly the point. It is fully consistent with competent police work for a lone officer to call for reinforcements when he discovers that something more than a routine traffic stop may be in progress. By not tipping his hand at the outset, Tyrie would merely be exercising reasonable prudence. Against this backdrop, the bare assertion of pretext does not create a factual conflict sufficient to justify an evidentiary hearing. See, e.g., United States v. LaBonte, 70 F.3d 1396, 1412–13 (1st Cir.1995) (explaining that a district court need not convene an evidentiary hearing when presented with "no more than conclusory prognostications and perfervid rhetoric").

The appellant's claim that the district court violated Fed.R.Crim.P. 12(g) is equally jejune. That rule does not demand that the trial court hold an evidentiary hearing on every affected motion. It simply requires the court to ensure that a verbatim record is made of all proceedings and hearings, including "such findings of fact and conclusions of law as are made orally." Fed. R.Crim.P. 12(g). The transcripts of the March 22 colloquy and the judge's subsequent denial of the motion to suppress fully satisfy the strictures of the rule.

### C.

#### Sufficiency of the Evidence

The appellant's sufficiency challenge implicates all three counts of conviction. In respect to counts 1 and 2, he suggests that there was inadequate evidence to show that he knowingly possessed either the gun or the ammunition. Regarding count 3, he adds

that the government produced no evidence that the gun had travelled in interstate commerce after having been stolen. We discern no merit in these contentions.

We review the trial court's denial of a motion for judgment of acquittal de novo. See United States v. Valle, 72 F.3d 210, 217 (1st Cir.1995). The measure by which we size up challenges to evidentiary sufficiency in a criminal case is a familiar one: "If the evidence presented, taken in the light most agreeable to the government, is adequate to permit a rational jury to find each essential element of the offense of conviction beyond a reasonable doubt, then the defendant's claim fails." Id. at 216. In pursuing this inquiry, we resolve all credibility conflicts to the government's benefit, and harmonize all reasonable inferences with the jury's verdict. See United States v. Taylor, 54 F.3d 967, 974 (1st Cir.1995). By like token, we concern ourselves with the weight and persuasive power of the evidence, not its nature, for either direct or circumstantial evidence, or any combination thereof, may suffice to defeat a motion for acquittal. See United States v. Spinney, 65 F.3d 231, 234 (1st Cir.1995).

1. **Scienter.** Turning first to counts 1 and 2, the statute of conviction, 18 U.S.C. § 922(g)(1), requires proof of three elements: (1) that the defendant had a record of prior felonious conduct, yet (2) knowingly possessed a gun (or ammunition), (3) in circumstances that implicated interstate commerce. See United States v. Powell, 50 F.3d 94, 101 (1st Cir.1995). The appellant concedes that the government proffered sufficient evidence to support findings beyond a reasonable doubt anent the first and third of these elements but disputes the sufficiency of the evidence regarding the second: his knowing possession of the firearm and the ammunition. His plaint boils down to a plea that the jury was duty bound to accept the only direct testimony on the subject—Nason's averment that he placed the gun and ammunition in the truck, returned it only minutes before the arrest, and never called the added contents to the appellant's attention—and not to go beyond it.

There are two major problems with this suggested approach. First, Nason's story, even if believed, does not necessarily exonerate the appellant; the latter might still have discovered the contraband between the time when Nason returned the truck and Tyrie flagged it down. Second, the jury was not obliged to accept Nason's testimony in whole or in part, but could instead draw reasonable inferences from the totality of the circumstances. *See, e.g., United States v. Olbres,* 61 F.3d 967, 971 (1st Cir.), *cert. denied,* —— U.S. ——, 116 S.Ct. 522, 133 L.Ed.2d 430 (1995); *United States v. O'Brien,* 14 F.3d 703, 707 (1st Cir.1994).

These problems are exacerbated by the other evidence in the record. The circumstantial proof of knowing possession is very strong. The appellant was both the owner and operator of the vehicle and, from where he sat, he had easy access to the gun (which seemed ready for immediate use) and the ammunition. Since the appellant exercised dominion and control over the area in which the gun and the ammunition were discovered, *see United States v. Echeverri,* 982 F.2d 675, 678 (1st Cir.1993), the jury was at liberty to find that he was in knowing constructive possession of the weaponry. *See United States v. Wight,* 968 F.2d 1393, 1398 (1st Cir.1992) (holding that "the element of 'knowing possession' under section 922(g)(1) may be established by proving that the defendant was in constructive possession of a firearm"); *see also United States v. Bergodere,* 40 F.3d 512, 518 (1st Cir.1994) (explaining that knowledge may be established from circumstances attendant to constructive possession), *cert. denied,* —— U.S. ——, 115 S.Ct. 1439, 131 L.Ed.2d 318 (1995). In short, the jury's conclusion concerning the appellant's knowing possession is eminently supportable on this record.

2. *Interstate Commerce.* The appellant raises a more focused challenge to his conviction on count 3. Bolstered by a recent Ninth Circuit case, *United States v. Cruz,* 50 F.3d 714, 719 (9th Cir.1995), he insists that under the statute of conviction, 18 U.S.C. § 922(j), it is an element of the offense that the firearm travel in interstate commerce *after* being stolen, and that the government's evidence here failed to nail down this element.

The difficulty with this argument is twofold. In the first place, we reject the notion that, to trigger § 922(j), a firearm must reenter the stream of interstate commerce after its theft. This court turned aside a similar challenge under 18 U.S.C. § 922(g) in *United States v. Gillies,* 851 F.2d 492, 493–95 (1st Cir.), *cert. denied,* 488 U.S. 857, 109 S.Ct. 147, 102 L.Ed.2d 119 (1988), and we find the rationale in *Gillies* to be persuasive. Thus, consistent with that rationale we hold that, under § 922(j), it is enough if the weapon floats in the stream of commerce at some point prior to the commission of the offense of conviction. *Accord United States v. Honaker,* 5 F.3d 160, 162 (6th Cir.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 1226, 127 L.Ed.2d 571 (1994). Because the appellant does not dispute that the firearm travelled in interstate commerce before coming to rest in his pickup, he cannot prevail.

The finishing touch is that there was evidence at trial that the firearm travelled interstate *as a stolen firearm.* The appellant's own witness, Nason, swore that he took the gun with him from Massachusetts to New Hampshire only a few days before the police found the weapon in the appellant's possession (and several years after the gun had been reported stolen). Thus, even if post-theft travel were an element of the offense, the verdict would not be undercut.[5]

### III

### Conclusion

We need go no further. Because the government brought the appellant to trial within the period prescribed by the Speedy Trial

---

5. The fact that the evidence of interstate travel was adduced in the defense case, rather than in the prosecution's case, is of no consequence. The court of appeals may properly consider all evidence presented when confronting a sufficiency challenge. *See United States v. Arache,* 946 F.2d 129, 138 (1st Cir.1991), *cert. denied,* 503 U.S. 948, 112 S.Ct. 1507, 117 L.Ed.2d 645 (1992).

Act, and no other error in the proceedings appears, the judgment below must be

*Affirmed.*