USCA1 Opinion

 

 United States Court of Appeals
 For the First Circuit

No. 97-2251

 UNITED STATES,

 Appellee,

 v.

 MARLA BARNES,

 Defendant, Appellant.

 APPEAL FROM THE UNITED STATES DISTRICT COURT

 FOR THE DISTRICT OF MASSACHUSETTS

 [Hon. Joseph L. Tauro, U.S. District Judge]

 Before

 Torruella, Chief Judge,
 
 Coffin and Bownes, Senior Circuit Judges.
 
 

 Stephen B. Hrones with whom Hrones & Garrity was on brief for
appellant.

 Jennifer H. Zacks, Assistant United States Attorney, with whom
Donald K. Stern, United States Attorney, was on brief for appellee.

October 27, 1998

 
 

 BOWNES, Senior Circuit Judge. Marla Barnes appeals from
her conviction for conspiracy to smuggle cocaine into the United
States and criminal forfeiture of $2,900 in drug proceeds. Her
appeal presents a single question: whether she was tried within
the 70-day time limit imposed by the Speedy Trial Act, 18 U.S.C.
 3161 (1985).
 On the first day of trial, Barnes moved to dismiss the
indictment, alleging that her right to a speedy trial had been
violated. The district court denied the motion, and Barnes was
subsequently tried and convicted on both counts. For the reasons
that follow, we conclude that the trial court erred when it denied
defendant's motion to dismiss. In this case, the court failed to
police the speedy trial clock vigilantly during a crucial 5-month
period beginning in the fall of 1996 when the trial date was
inexplicably adjourned. As a result, the 70-day limit was exceeded
by some 121 days. We find, however, that the seriousness of the
offenses with which defendant was charged, the absence of any
actual prejudice to her, and defendant's own failure to promptly
assert her speedy trial rights warrant dismissal of the indictment
without prejudice. 
 BACKGROUND
 We begin by recounting the path Barnes's case took below. 
On August 10, 1995, a complaint was issued in the United States
District Court for the District of Massachusetts charging Barnes
and her brother Reynaldo Barnes with conspiracy to import cocaine
into the United States from Panama. Federal law enforcement
agents arrested Barnes on August 11, 1995 in Brooklyn, New York,
pursuant to a warrant issued by the United States District Court
for the District of Massachusetts. She appeared before a
magistrate judge in the Eastern District of New York that same day. 
An order was entered 3 days later removing Barnes to the District
of Massachusetts. 
 On August 23, 1995, a federal grand jury returned a two-
count indictment against Barnes and her brother, charging them with
conspiracy to import cocaine under 21 U.S.C. 963 (1998) and with
criminal forfeiture under 21 U.S.C. 853 (1998). 
 Barnes's first appearance before a judicial officer in
Massachusetts took place on September 25, 1995 before United States
Magistrate Judge Joyce L. Alexander. A briefing schedule for
pretrial motions was set at this conference: all motions were to be
filed by October 3, 1995. 
 On September 27, 1995, Reynaldo Barnes filed a motion
seeking additional time to file pretrial motions up to and
including October 13, 1995. This motion was granted.
 Barnes was arraigned on October 3, 1995; she entered a
plea of not guilty to both counts. At defendant's request,
Magistrate Judge Alexander extended the time to file pretrial
motions to October 20. 
 On October 20, 1995, defendants filed a flurry of
pretrial motions seeking, inter alia, a bill of particulars,
various discovery items, and Jencks Act material. Magistrate Judge
Alexander held a hearing on these motions on November 30, 1995,
after which she took the matters under advisement, and eventually
disposed of all motions on December 14, 1995. An order of
excludable delay was thereafter entered, excluding the period of
time from October 20 to December 14, 1995.
 There was no formal activity in the case until
January 24, 1996, when the government formally moved the court to
schedule a status conference to "enable the Court and parties to
establish a firm date for trial, facilitate the identification and
resolution of any anticipated evidentiary issues at trial, and
possibly facilitate the resolution of this case prior to trial." 
The district court granted the motion on January 31, 1996, and
scheduled a conference for February 20, 1996. By letter dated
February 7, 1996, Reynaldo Barnes requested that the conference be
adjourned because his counsel, William P. Homans, was to be on
trial in another case that same week. The court granted the motion
on February 9, rescheduling the conference for March 4, 1996. On
March 4, 1996, the status conference was held, during which the
court set a trial date of April 8, 1996.
 On March 18, 1996, defendants jointly moved to continue
the trial date to June 10, 1996 and to exclude the time from the
date of the motion until the new trial date. Defendants cited
three reasons for the request: Mr. Homans was recovering from
pneumonia, defendants were engaged in ongoing plea negotiations
with the government, and a conflict had arisen in the trial
schedule of Barnes's attorney, Stephen B. Hrones. Their motion was
granted by the court on March 19, 1996. 
 The critical chain of events central to this appeal then
occurred. On May 30, 1996, Barnes moved the district court for 
another continuance "until sometime in late September or early
October." She explained that her counsel was engaged in another
trial on June 10. The court granted the motion by memorandum order
on June 3, 1996 and continued the trial until October 7, 1996 at
11:00 a.m. 
 The motion for a continuance was followed by defendants'
joint motion to "waive their speedy trial rights from June 10 until
the date set for the new trial in the fall of 1996." The motion to
waive was granted by margin order on August 28, 1996, and the court
expressly excluded time from the Speedy Trial clock through
October 7, 1996. 
 Although it is far from certain precisely what happened
next, the record suggests that the court set this matter down for
trial for October 7, 1996 at 11:00 a.m. and then telephonically
adjourned the trial without date. No one appeared for trial on
October 7. Neither defendant nor the government can explain why
the trial did not go forward. Neither the government nor any of
the defendants apparently requested a continuance or objected to
it; no one seems to remember when the trial was adjourned. The
district court never explicitly excluded time from the speedy trial
clock or made any findings as to why the adjournment was required
in the interests of justice. It did not issue a written order. 
 On December 3, 1996, after two months had passed, the
parties jointly moved the court for a status conference for the
purpose of setting a trial date. The motion included an odd
statement: "the parties jointly move to exclude the period of delay
in the interests of justice and due to continuing plea
negotiations, from the date of entry of an Order on defendant's
pre-trial motions until such date as this Court sets for trial." 
(Emphasis added.) By its terms, the motion sought a retroactive
and an unlimited forward-looking exclusion of time. The motion was
signed only by the Assistant United States Attorney ("AUSA") Heidi
Brieger on behalf of both the government and Barnes. Barnes's
attorney, Mr. Hrones, did not sign the papers. 
 Seven days later, Barnes filed a "Motion to Correct a
Joint Motion for Status Conference" protesting the government's
effort to have time excluded by the court. This document stated
that "although [her] attorney authorized the Joint Motion for
Status Conference he did not give authority to [AUSA] Brieger to
add a paragraph indicating that the defendant had agreed to exclude
the period of delay." Barnes indicated that she opposed any
exclusion of the delay, having "made clear for some time now to
[AUSA Brieger] that [sh]e want[ed] a trial." Accordingly, Barnes
requested that the court "strike the defendant's name from her
request to exclude the delay." The government did not oppose
defendant's motion to correct. 
 On March 7, 1997 some three months later the court
sent defendants and the government a notice informing them that a
conference had been scheduled for March 25, 1997. The court did
not exclude any time, either forward or backward, as requested in
the purported joint motion.
 Two noteworthy events transpired at the March 25 status
conference. First, Reynaldo Barnes moved to change his plea. The
motion was granted and a date was set for his anticipated plea of
guilty. Second, the court reset Barnes's trial date for May 5,
1997. 
 On April 4, 1997, the government, with defendant's
consent, filed a motion to continue the trial from May 5 to May 19,
1997. Accordingly, the district court memo endorsed the motion and
rescheduled trial for May 19, 1997. 
 On May 15, 1997, Reynaldo Barnes pled guilty to both
offenses. The next day, May 16, 1997, the government filed a
motion in limine seeking an order permitting the government to use
transcripts of recorded conversations between undercover agents and
defendants. 
 On May 19, 1997, the first day of trial but before jury
selection, Barnes moved to dismiss the indictment on the basis of
the Speedy Trial Act. The court denied the motion but made no
factual findings beyond observing that Mr. Hrones was on trial in
another case on May 5, "the last time the case was going to be
scheduled," and that Reynaldo Barnes's counsel, Mr. Homans, was
sick for a period of time. The court then resolved all outstanding
motions in limine and empaneled the jury. 
 Barnes was tried and convicted on both counts, and was
eventually sentenced to 188 months in prison, to be followed by
five years of supervised release. She then timely filed this
appeal.
 DISCUSSION
I. Standards
 The Speedy Trial Act "commands that a defendant be tried
within 70 days of the latest of either the filing of an indictment
or information, or the first appearance before a judge or
magistrate." Henderson v. United States, 476 U.S. 321, 322 (1986);
see 18 U.S.C. 3161(c)(1). The sanction for failure to adhere to
this time limit is severe the indictment is dismissed on motion
of the defendant. See 18 U.S.C. 3162(a)(2). In determining
whether a violation of the Act has occurred, certain "periods of
delay shall be excluded in computing the time within which . . .
the trial . . . must commence." 18 U.S.C. 3161(h). 
 The following are among the kinds of delays that are
properly omitted from this calculation:

 [a]ny period of delay resulting from other
 proceedings concerning the defendant,
 including but not limited to 

 . . . .
 
 (F) delay resulting from any pretrial motion,
 from the filing of the motion through the
 conclusion of the hearing on, or other prompt
 disposition of, such motion; 

 . . . .

 (J) delay reasonably attributable to any
 period, not to exceed thirty days, during
 which any proceeding concerning the defendant
 is actually under advisement by the court. 

 . . . .

 (8)(A) Any period of delay resulting from a
 continuance granted by any judge on his own
 motion or at the request of the defendant or
 his counsel or at the request of the attorney
 for the Government, if the judge granted such
 continuance on the basis of his findings that
 the ends of justice served by taking such
 action outweigh the best interest of the
 public and the defendant in a speedy trial.

18 U.S.C. 3161(h).
 We review the district court's denial of defendant's
motion to dismiss based on the Speedy Trial Act de novo. SeeUnited States v. Rodriguez, 63 F.3d 1159, 1162 (1st Cir.), cert.denied, 56 U.S. 1032 (1995). Barnes's motion to dismiss was denied
by the court on the first day of trial without any calculation of
the Speedy Trial Act timetable. Accordingly, on this appeal "[w]e
must start from scratch in the computation of excludable and
nonexcludable time under the Act." United States v. Pringle, 751
F.2d 419, 429 (1st Cir. 1984). We do so in two steps. First, we
must "do the basic mathematics and determine the aggregate time
elapsed awaiting trial." United States v. Staula, 80 F.3d 596, 600
(1st Cir.), cert. denied, U.S. , 117 S. Ct. 156 (1996). Second,
we then ascertain how many days should be excluded from the total
time. See id. 
 With this analytical framework in mind, we turn to
computing the number of days that elapsed in the case at bar. 
II. Application
 A. When Did the Time Begin to Accrue?
 The first issue to be resolved is when the speedy trial
clock began to tick. Section 3161(c)(1) requires that a defendant
be tried within 70 days of the occurrence of one of two events: 
the filing of the indictment or the defendant's appearance "before
a judicial officer of the court in which such charge is pending,
whichever date last occurs." 18 U.S.C. 3161(c)(1).
 Barnes, relying on a separate provision of the Act that
governs the tolling of time for unreasonable delays associated with
the transfer of defendants, argues that any amount of time above
and beyond the 10 days between the entry of the order compelling
her removal from New York and her actual arrival in Massachusetts
should count toward the 70-day limit. Section 3161(h)(1)(H)
provides that any unreasonable delay resulting from the transfer of
a defendant is excludable, and mandates that any such delay in
excess of ten days from the date of the order directing
transportation and "the defendant's arrival at the destination" be
presumed unreasonable. 
 Barnes's reliance on this provision to start the speedy
trial clock is misplaced. It is a tolling provision, not one that
sets forth the events that trigger the start of the 70-day period
in which a trial must be held. The pre-indictment or pre-
appearance transfer of a defendant is not explicitly listed as one
of the only two triggering events in section 3161(c)(1), and we
decline to read into that provision what was not expressly included
by Congress. Accordingly, while delay resulting from such a
transfer may count toward the 30-day arrest-to-indictment period,
see 18 U.S.C. 3161(b), it does not start the 70-day speedy trial
clock. The delay resulting from the transfer of Barnes from New
York to Massachusetts thus took place well before the clock even
began to run. 
 Applying the terms of the Act, we conclude that time on
Barnes's speedy trial clock began to accrue on September 26, 1995,
the day after her first appearance before a magistrate judge in the
District of Massachusetts. The date of the conference, is, of
course, excludable as a "proceeding concerning the defendant." 
United States v. Santiago-Becerril, 130 F.3d 11, 16 (1st Cir.
1997). The clock stopped on May 19, 1997, Barnes's first day of
trial. A total of 601 days passed between the start of the speedy
trial clock and the date it stopped for good on May 19, 1997. We
now evaluate which of these days are excludable and which must be
counted toward the 70-day deadline. 
 B. Excludable Days
 While September 26, 1995 must be counted, the entire
period between September 27, 1995 and December 14, 1995 must be
excluded from the final tally. On September 27, 1995 Barnes's
codefendant moved for an extension of time to file pretrial
motions. The motion was granted until October 13, 1995, and the
deadline was later extended again until October 20, 1995. It is
well-settled that an exclusion of time attributable to one
defendant is applicable for all codefendants. See id. at 19. 
Therefore, this time is not counted toward the 70 days. See United
States v. Jodoin, 672 F.2d 232, 237 (1st Cir. 1982) (excluding time
that elapsed due to defendant's request for an extension of time as
"directly attributable to [his] . . . motion"). The magistrate
judge also properly excluded the period between the actual filing
of the motions (October 20, 1995) and the hearing on the motions
(November 13, 1995), for it falls under section 3161(h)(1)(F) as
"delay resulting from any pretrial motion, from the filing of the
motion through the conclusion of the hearing on, . . . such
motion." Similarly, the magistrate judge correctly excluded the
thirty days between November 14 and December 14 during which she
had the initial batch of pretrial motions under advisement. See 18
U.S.C. 3161(h)(1)(J).
 The government concedes that the 40 days between
December 15 and January 23, 1996 are not excludable. We agree. 
 1. Motion Requesting a Status Conference
 The excludability of the next segment of time turns on
whether the government's motion to set a status conference filed on
January 24, 1996 is a "pretrial motion" within the meaning of
section 3161(h)(1)(F). Barnes argues that such a motion does not
qualify as a pretrial motion because it is not of a "substantive"
nature. For its part, the government insists that it is a pretrial
motion and argues that time should be excluded from the moment the
motion was filed until the date of the requested status conference.
 We hold that a motion requesting the scheduling of a
pretrial conference is a "pretrial motion" so as to trigger an
exclusion under the Speedy Trial Act. Section 3161(h)(1)(F)
states, rather expansively, that delay resulting from "any pretrial
motion" shall be excluded. It does not distinguish between more
significant or complex "pretrial motions" and simple or routine
motions. For this reason, we have read the term "pretrial motion"
broadly to encompass all manner of motions, ranging from informal
requests for laboratory reports, see United States v. Jorge, 865
F.2d 6, 11 (1st Cir.), cert. denied, 490 U.S. 1027 (1989), to
"implied" requests for a new trial date, see Santiago-Becerril, 130
F.3d at 17. A motion requesting the scheduling of a status
conference has undeniable "pretrial" significance: all kinds of
matters affecting the course of trial, including discovery,
motions, and trial dates may be discussed at such a conference. 
Cf. Fed. R. Crim. P. 17.1 ("[T]he court upon motion of any party or
upon its own motion may order one or more conferences to consider
such matters as will promote a fair and expeditious trial."). 
There seems to be no good reason to exclude a motion for a status
conference from the universe of possible pretrial motions. See,
e.g., United States v. Bellucci, 737 F. Supp. 706, 710 (D. Mass.
1990) (Tauro, D.J.) (holding that motion for status conference was
pretrial motion for purposes of tolling Speedy Trial Act). Hence,
in this case, the clock stopped as soon as the government filed its
motion seeking a status conference on January 24, 1996. 
 The next question is how much time should be tolled. The
Supreme Court has construed subsection (F) as setting forth a two-
tiered approach to determining the extent of excludable delay
caused by the submission and disposition of pretrial motions. SeeHenderson, 476 U.S. at 329-30. For a pretrial motion on which a
hearing is held, the entire period from the filing of the motion to
the date of the hearing, regardless of when the hearing is
scheduled, plus up to 30 additional days while the motion is "under
advisement" is automatically excluded. See id.; Rodriguez, 63 F.3d
at 1163. By contrast, when "motions that require no hearing" are
involved, time is tolled only until the "prompt disposition" of the
motion, which ordinarily cannot exceed the 30-day "under
advisement" period. Henderson, 476 U.S. at 329; see Santiago-
Becerril, 130 F.3d at 17; S. Rep. No. 96-212, 96th Cong., 1st
Sess., at 34 (1979) ("[I]f motions are so simple or routine that
they do not require a hearing, necessary advisement time should be
considerably less than 30 days."). A motion is deemed to be taken
under advisement when "'the court receives all the papers it
reasonably expects.'" Rodriguez, 63 F.3d at 1163 (quoting
Henderson, 476 U.S. at 329). 
 Because a motion requesting only the scheduling of a
status conference requires no "hearing" marked by oral argument,
factual findings, or legal rulings but involves merely the simple
administrative act of setting a date, it must be resolved within 30
days of the date the Court has received all it expects to properly
consider the request. See Rodriguez, 63 F.3d at 1165-66; United
States v. Ferris, 751 F.2d 436, 440 (1st Cir. 1984); 18 U.S.C.
 3161(h)(1)(J). It follows that such a motion is resolved as soon
as the conference is actually scheduled not when the various
matters for possible discussion, in fact, are broached and that
the clock will start again the following day. The government
disagrees, arguing that the clock should be tolled until the actual
date of the conference, which it calls a "hearing"; but to adopt
this reasoning would contravene the language of the Act. Because
the setting of the date resolves the motion in its entirety, the
conference cannot possibly represent a "hearing on . . . such
motion." 18 U.S.C. 3161(h)(1)(F). 
 In United States v. Staula, 80 F.3d 596 (1st Cir. 1996),
we held that "a hearing is any on-the-record colloquy in which the
district court hears the arguments of counsel and considers those
arguments prior to deciding a pending motion." Id. at 602. Our
reasoning today is entirely consistent with that decision. Once a
conference has been set down on a court's calendar, there is no
longer any "pending motion" to decide. The motion seeking a status
conference has already been resolved. 
 Needless to say, there are varieties of motions that may
or may not require a hearing. But we need not wander too deeply
into this thicket today, for we hold only that motions seeking
nothing more than the scheduling of a conference must be acted upon
within 30 days. In doing so, we emphasize that, consistent with
the letter and spirit of the Speedy Trial Act, relatively simple
motions should be disposed of expeditiously or the clock will
resume ticking.
 Applying the foregoing principles to the present facts,
we find that the clock was tolled from January 24 until January 31,
1996. The clock ran for the next six days and stopped again on
February 7, 1996, when Reynaldo Barnes moved to adjourn the
conference. Although the court made no express findings in
granting the motion, the letter motion itself makes clear that
Reynaldo Barnes's counsel was unavailable until at least the first
of March due to conflicts with his work and personal schedules. 
Thus, the court's decision to grant the continuance comports with
the requirements of section 3161(h)(8)(A). See United States v.
Rush, 738 F.2d 497, 507 (1st Cir. 1984) ("[I]t is not necessary for
the court to articulate the basic facts when they are obvious and
set forth in a motion for a continuance."), cert. denied, 470 U.S.
1004 (1985). The clock resumed on March 5, 1996, the day after the
conference. The clock temporarily stopped again on March 18 due to
defendants' two overlapping requests to postpone the trial, and
remained stopped until October 8, 1996. 
 At this point, 61 nonexcludable days had already accrued.
 2. Adjournment of the October 8, 1996 Trial Date
 This case turns on the period starting with the
October 8, 1996 trial date. Frankly, we, like the attorneys for
both sides, are confused as to the exact circumstances surrounding
the adjournment of the October 7, 1996 trial date. It is a
mystery. Neither the government nor any of the defendants formally
moved for a continuance, although it is theoretically possible that
someone so moved informally. One would, however, usually expect
one party to accuse the other of requesting a continuance if an
informal request had been made by one of the lawyers; but no
illuminating bout of finger-pointing has erupted. This suggests
that the court, on its own volition, ordered the adjournment
without date. The government contends that the trial was
adjourned upon consent of defendant, but the record reflects no
such consent. To accept the government's position therefore
requires us to infer from silence that defendant's consent was
given. This we cannot do. What is apparent is that even assuming
a trial date was set for October 7 and then continued by the court
without objection, the grant of such a continuance of which there
is no contemporaneous written or oral record fails to comply with
the Act. See Amended Speedy Trial Act Guidelines, Aug. 28, 1981,
reprinted in Robert L. Misner, Speedy Trial Federal and State
Practice, App. B, at 775 ("The fact that the defendant has
requested the continuance or consents to it is not in itself
sufficient to toll the operation of the time limits."). Whether
time resulting from a continuance may toll the Act depends on
whether the court abused its discretion by granting the
continuance. See Pringle, 751 F.2d at 432. 
 We find that the court should not have adjourned the
trial date in the manner that it did. A trial court's discretion
to invoke the ends of justice exception by granting a continuance
is exceedingly "narrow," and should not be done "lightly or
routinely." United States v. Mitchell, 723 F.2d 1040, 1044 (1st
Cir. 1983). 
 While a continuance may have been entirely justified
under the circumstances, the court failed to set forth "in the
record of the case . . . its reasons for finding that the ends of
justice served by the granting of such continuance outweigh the
best interest of the public and defendant in a speedy trial." 18
U.S.C. 3161(8)(A). There is simply no record of the continuance. 
Although we have held that there is no need to articulate the basic
facts critical to a motion for a continuance when they are set
forth in the motion papers, see Rush, 738 F.2d at 507, here, no one
moved to continue the trial. Consequently, we cannot say with any
reasonable certainty that the continuance met the ends of justice
standard, especially where the parties themselves have offered no
explanation for why or when the trial date was adjourned. The lack
of findings is particularly troubling because of the open-ended
nature of the continuance granted here. A firm trial date was not
set until the March 25, 1997 conference more than five months
after it was last continued. For these reasons, we find that the
trial court abused its discretion in granting (or sua sponteordering) the continuance, and the resulting delay of 56 days must
be counted against the speedy trial clock.
 3. The Pringle Exception
 In an effort to defeat the operation of the Act, the
government argues that the entire period of time from October 7,
1996 onward must be excluded because Barnes waived her right to a
speedy trial. The government maintains that Barnes's June 6, 1996
waiver impermissibly lulled it and the district court to sleep. We
reject the government's theory of an unlimited waiver.
 Defendants generally may not elect to waive the
protections of the Act. The reason is that the public has at least
as great an interest as the defendant in an expeditious criminal
trial. See United States v. Hastings, 847 F.2d 920, 923 (1st Cir.)
(noting that society has a "general interest in resolving the guilt
or innocence of those accused of crime rapidly (consistent with
fundamental fairness) and punishing those found to be guilty"),
cert. denied, 488 U.S. 925 (1988). 
 In United States v. Pringle, 751 F.2d 419 (1st Cir.
1984), we crafted a limited unclean hands exception to this rule. 
Cf. United States v. Gambino, 59 F.3d 353, 360 (2d Cir. 1995)
("[T]hose courts recognizing the [Pringle] exception have placed
tight restrictions on the finding of waiver."), cert. denied, 517
U.S. 1187 (1996). In Pringle, defendants had sought to continue
the trial, declaring that "all defendants waive[d] their rights to
a speedy trial." 751 F.2d at 433. Defendants later moved to
dismiss the indictment based on the delay that ensued in selecting
a new trial date. The district court denied the motion. We
affirmed, holding, inter alia, that although a defendant cannot
waive the right to speedy trial, he or she cannot "lull[] the court
and prosecution into a false sense of security only to turn around
later and use the waiver-induced leisurely pace of the case as
grounds for dismissal." Id. at 434. 
 The government here asserts that defendants' June 6, 1996
waiver was indefinite in scope, tolling the clock up to and
including the first date of trial in May 1997. Relying on
Pringle, the government argues that the waiver provided by
defendants caused the delay by misleading the government and the
court into believing that any date would be acceptable to them. 
While any waiver would technically be inoperative, if the
government is correct about the nature of the waiver, the delay
that resulted from the waiver would be excludable under Pringle. 
 We are not persuaded that the Pringle exception applies
to the extent suggested by the government. While defendants'
waiver definitely contributed to a delay until October 7, Barnes
cannot be held responsible for the delay that occurred after trial
was initially set for that date and then subsequently continued. 
We reach this conclusion for several reasons.
 First, defendants did not offer an open-ended waiver. 
Unlike the sweeping language contained in defendants' waiver in
Pringle, the waiver at issue does not represent defendants' consent
to an indefinite exclusion of time, but authorized time to be
excluded only "until the date set for the new trial in the fall of
1996." By its terms, the document did not waive Barnes's speedy
trial rights indefinitely. 
 Second, even if there was any ambiguity as to the scope
of the waiver, the extraneous evidence conclusively puts that doubt
to rest in Barnes's favor. The waiver closely followed and was
inextricably bound up with Barnes's request for an adjournment
until "late September or early October." Thus, read together with
her motion to continue, the waiver put the district court and the
government on notice that Barnes desired a trial by October 1996. 
 Third, no one was "lull[ed]" to sleep by the waiver. The
"joint motion for a status conference" later drafted by the
government proves this. In the motion, the parties purportedly
sought an exclusion of time "from the date of an entry of an Order
on defendant's pre-trial motions until such date as this Court sets
for trial." (A. 37). But if the government had truly believed
that Barnes had already provided an open-ended waiver on June 6,
1996, such a broad and seemingly retroactive exclusion of time
would have been unnecessary. The government's own actions
therefore suggest that the government itself believed that there
might still be a speedy trial problem even after defendants signed
the waiver. 
 In addition, the trial court acted on defendants' motions
(including the waiver) by continuing the trial only until
October 7, 1996, showing that it, too, understood that Barnes
wished to be tried by October 1996. The date set by the court
stood at the very end of the spectrum of Barnes's waiver. At best,
Barnes may be said to have consented to and caused the delay
throughout the fall of 1996, tolling the clock under Pringle until
early October, but certainly no later. In other words, the limited
waiver did not "create the delay[]" that transpired when the date
was adjourned from October 7. Id. at 434. 
 Nothing in the record even remotely suggests that Barnes
strategically attempted to "sandbag" anyone. Instead, the record
shows that she made clear to the court and prosecution that she
desired to be tried in the fall of 1996, at the latest by "early
October." That did not happen. The reasons for this delay have
not been made clear by the guardians of the speedy trial clock: the
court, and to a lesser extent, the government. Whether the
continuance was justified and the court neglected to make the
necessary ends of justice findings or the government simply lost
track of the days makes no difference. The unexplained delay
occurred; it must be accounted for. 
 If Barnes is guilty of anything during this crucial time
frame, it is that she did not object earlier. But her mere failure
to object to a delay does not constitute "work[ing] both sides of
the street," Pringle, 751 F.2d at 434, and it does not excuse the
trial court's failure to make explicit findings as to why a
continuance best served the interests of justice. To hold
otherwise would be to permit the finding of a waiver whenever a
defendant fails to object to a continuance. Such a conclusion
would turn the Act on its head by shifting the burden of enforcing
the Act to the defendant. 
 4. Post-Violation Delay
 Although the Speedy Trial Act was violated as early as
October 16, 1996, we press on with our analysis to discern the full
extent of the unexcused trial delay. Because the continuance was
defective, the clock continued to run unabated until December 3,
1996, the date the government filed the "joint motion" seeking the
scheduling of a conference for the purpose of setting a firm trial
date and an exclusion of time.
 The motion for a status conference was considered to be
under advisement on December 10, 1996, the date Barnes filed her
opposition to the request to exclude time. Hence, the 30-day
period from December 11, 1996 through January 9, 1997 is excluded. 
But the trial court did not act on this motion until March 7, 1997,
long after this 30-day window had shut, and "[w]e see no reason why
the pretrial conference could not have been scheduled sooner than
it was." Mitchell, 723 F.2d at 1048. Accordingly, January 10,
1997 through March 24, 1997, the additional 74 days that accrued
before the court actually resolved the motion, must count on the
clock.
 The government also contends that terms of the so-called
joint motion for a status conference warrant excluding the time
from December 3, 1996 onward. The problem with this argument is
that the court never actually excluded any time based on this
motion. It simply set a date for a conference months later, either
ignoring or implicitly rejecting the request to exclude time. 
Given the hotly-disputed nature of the request, including whether
Barnes had given her consent to make it, we cannot say that the
court erred by refusing to exclude time. For this reason, the
motion does not toll the Act for more than the 30 days during which
it should have been decided. 
 Moving forward, we find that the 56 days between
March 25, 1997 and May 19, 1997 must be excluded. At the March 25
conference, Reynaldo Barnes moved to change his plea, and the court
accepted his guilty plea at a hearing on May 15, 1997. The
intervening time is not counted, for "all of the days between the
date a codefendant files a motion for a change of plea and the date
of the change of plea hearing itself are excludable from the
[Act]'s seventy-day time limit." Santiago-Becerril, 130 F.3d at
20. Moreover, the overlapping adjournment sought by Barnes covers
the period from April 4, 1997 until the first day of trial. It
goes without saying that the government's in limine motion filed
May 16, 1997 also tolled the clock until the motion was resolved on
the first day of trial.
 To summarize, we find that 191 days of nonexcludable time
elapsed between Barnes's first appearance before the magistrate
judge in the District of Massachusetts and the first day of trial. 
Forty-one days passed by the time of defendant's first conference
before the district court; 20 days elapsed between February 1 and
October 8, 1996; 56 days passed between the October 8, 1996 trial
date and the filing of the joint motion requesting a conference on
December 3, 1996; and 74 days of unexcused time elapsed while the
motion requesting a pretrial conference was pending (excluding the
30-day under-advisement period). The 70-day limit was clearly
exceeded. The indictment should have been dismissed. 
 C. The Remedy
 The final inquiry is whether the indictment should now be
dismissed with or without prejudice. Our usual practice is to
remand to the trial court to address this question, for it is best
situated to assess the degree of the violation and its likely
effect on the parties involved. Nevertheless, we find that the
only proper remedy in this case is to dismiss the indictment
without prejudice. For this reason, as well as for the sake of
judicial economy, we make this determination in the first instance. 
See United States v. McAfee, 780 F.2d 143, 146 (1st Cir. 1985)
(deciding proper remedy on appeal).
 Our analysis is guided by the following considerations:
(1) the seriousness of the offenses; (2) the circumstances leading 
to the delay; (3) the impact reprosecution would have on the
administration of justice and the enforcement of the Speedy Trial
Act; and (4) any related miscellaneous factors, including whether
the delay resulted in actual prejudice to the defendant. SeeHastings, 847 F.2d at 924; 18 U.S.C. 3162(a)(2).
 1. Seriousness of the Offenses
 As to the severity of the offenses, we find that this
factor weighs strongly in favor of dismissal without prejudice. We
have often observed that "the graver the crimes, the greater the
insult to societal interests if the charges are dropped, once and
for all, without a meaningful determination of guilt or innocence." 
Hastings, 847 F.2d at 925. The government charged Barnes with
conspiracy to import 110 kilograms of cocaine into the United
States in the type of drugs-for-profit scheme that Congress has
deemed a serious felony. See, e.g., United States v. Munoz, 36
F.3d 1229, 1239 (1st Cir. 1994) ("Conspiracy to distribute a large
quantity of cocaine . . . is a serious crime"), cert. denied, 513
U.S. 1179 (1995); Hastings, 847 F.2d at 925 ("By their very nature,
drugs-for-profit offenses are extremely serious."). 
 Defendant attempts to minimize the gravity of the charges
leveled against her by asserting that the actual importation of
drugs never took place and by claiming that the evidence at trial
suggests that no agreement was ever reached as to the criminal
enterprise. These arguments are easily rejected. First, the mere
fact that the criminal plan was never successfully carried out is
immaterial to whether the charge of conspiracy constitutes a
serious offense. As noted before, there can be little doubt that
it is. Second, despite Barnes's characterization of the evidence
of her intent to conspire as weak, the trial record, which we must
view in the light most favorable to the government, shows
otherwise: a jury convicted Barnes of conspiring to import cocaine
and that verdict necessarily included a finding that Barnes had
agreed with others to traffic in drugs. In short, that defendant
was charged with and eventually convicted of a drug trafficking
conspiracy involving a considerable amount of drugs thus militates
heavily in favor of permitting reprosecution. 
 2. Circumstances Leading to the Delay
 We next consider the relative blame each side bears in
producing the unexcused delay. The portrait of delay is somewhat
complex. There is no question that the primary blame must be
assigned to the court. The district court should have articulated
its reasons for indefinitely continuing the trial date from
October 8, 1996 and should not have let several months slip by
before scheduling a new conference, much less a firm date for
trial. Likewise, the prosecutor, who should already have been
aware that, as of the fall of 1996, at least 61 nonexcludable days
had elapsed, failed to monitor scrupulously the passing days and
alert the court that the deadline fast approached. "Even though a
prosecutor does not bear the burden of monitoring the court's
compliance with the [Speedy Trial Act] in absence of an announced
rule, district courts do look to prosecutors for assistance as
officers of the court." United States v. Ramirez, 973 F.2d 36, 39
(1st Cir. 1992).
 At the same time, however, there is no evidence that the
delay was caused by bad faith conduct on the part of the
prosecutor. We do note, without so finding, that AUSA Brieger's
effort to obtain an exclusion of time could be viewed as causing
some of the post-violation delay. A plausible interpretation of
the facts certainly is that as December 1996 drew near, the
government's lawyer suddenly realized that there might be a speedy
trial problem and hastily added a retroactive and open-ended
exclusion in an attempt to remedy the perceived difficulty. The
prosecutor's actions may have misled the court into believing that
Barnes had no objection as to when she might be tried. But we do
not attach too much weight to this possibility, for even if the
government's counsel mischaracterized the extent of defendant's
consent for the December 3, 1996 motion, the speedy trial violation
had already occurred. Thus, the government's conduct did not
actually bring about the violation. There is nothing in the record
to suggest that prosecutorial misconduct rather than administrative
negligence caused the 70-day deadline to be exceeded in the first
place. Where, as here, the actual speedy trial violation resulted
solely from neglect rather than intentional misconduct, that
circumstance tips ever so slightly in favor of dismissal without
prejudice. See, e.g., Hastings, 847 F.2d at 925-26. 
 There remains, of course, the possibility that the
government's actions exacerbated the delay even if they were not
directly responsible for producing the violation. We think,
however, that Barnes's prompt clarification on December 10, 1996
that she was not waiving her speedy trial rights but was ready for
trial sufficed to minimize this danger. 
 Finding reason to spread the blame, we note, too, that
Barnes herself could have pushed the proceedings along at various
crucial junctures but chose not to do so. She did not behave like
a defendant who wanted her day in court posthaste. Instead, she
requested several continuances in the spring of 1996. Furthermore,
she could have objected to the adjournment of the October 7, 1996
trial date or at least have voiced her preference for a specific
trial date, but she failed to clearly and loudly demand a quick
trial. And rather than immediately asserting her speedy trial
rights once the violation occurred, she consented to one additional
lengthy continuance after the 70-day period had already run its
course. Defendant never raised the speedy trial claim until the
last possible moment when a trial was simply unavoidable. 
Although Barnes was under no obligation to monitor the clock, we
nevertheless find that her willingness to abide the unexcused delay
of some 5 months and participate in further delay should be counted
against her. Cf. Santiago-Becerril, 130 F.3d at 22 (weighing
defendant's failure to demand speedy trial until eve of trial
against him in assessing Sixth Amendment speedy trial claim);
McAfee, 780 F.2d at 146 (dismissing indictment without prejudice
where defense counsel bore some blame for delay). We have already
determined that the indictment must be dismissed. She should not
be doubly rewarded for sitting silently as the delay mounted. 
 3. Effect of Reprosecution on Administration of 
 Justice and Enforcement of the Act 

 The effect that reprosecution would have on the
administration of justice and enforcement of the Speedy Trial Act
likewise does not call for barring reprosecution. To be sure, the
orderly administration of justice necessarily is hindered to some
degree whenever the Act is violated. Nevertheless, a retrial
should not take more than one week (the first trial lasted four
days), and there is no reason to believe that reprosecution would
otherwise have a deleterious effect on the fair and efficient
administration of justice. 
 Similarly, enforcement of the Speedy Trial Act would not
be unduly hampered by allowing Barnes to be retried. There is
little doubt that the harsh remedy of dismissal with prejudice has
greater deterrence value than its counterpart. But considerations
of general deterrence are not dispositive or else dismissal with
prejudice would impermissibly become the preferred tool. SeeUnited States v. Taylor, 487 U.S. 326, 334 (1988) ("Congress did
not intend any particular type of dismissal to serve as the
presumptive remedy for a Speedy Trial Act violation."). Moreover,
the fact that a retrial might be necessary at all is often
deterrence enough. We find that to be true here. As the Supreme
Court has observed,
 Dismissal without prejudice is not a toothless
 sanction: it forces the Government to obtain
 a new indictment if it decides to reprosecute,
 and it exposes the prosecution to dismissal on
 statute of limitations grounds. Given the
 burdens borne by the prosecution and the
 effects of delay on the Government's ability
 to meet those burdens, substantial delay well
 may make reprosecution, even if permitted,
 unlikely.

Id. at 342. Conversely, little would be gained in the case at bar
by foreclosing the possibility of another trial.
 4. Miscellaneous Factors: Length of Delay
 and Actual Prejudice 

 Two final closely related considerations merit
discussion: the length of delay and actual prejudice. On its
face, the length of delay in this case more than twice the extent
statutorily permissible is troubling. At first blush the sheer
length of unexcused delay might suggest actual prejudice, but
Barnes has never once claimed that the delay adversely affected her
ability to prepare for trial, much less articulated any facts
suggesting how she was actually prejudiced by the tardy trial date. 
The absence of any consequential prejudice to defendant points
toward permitting a new trial. See Taylor, 487 U.S. at 341. 
 Weighing all of these circumstances as a whole, we
conclude that dismissal without prejudice is the appropriate
remedy. In fashioning the proper curative, we find dispositive
that the crimes charged are grave, that there is no evidence of bad
faith conduct on the part of the government, that the record
reveals no actual prejudice to the defendant, and that defendant
contributed to some of the delay by repeatedly seeking adjournments
and by not asserting her rights as soon as the violation occurred. 
 CONCLUSION
 The decision of the district court denying defendant's
motion to dismiss is reversed, the judgment of conviction and
sentence entered against the defendant are hereby vacated, and the
indictment is dismissed as to her without prejudice.
 So ordered.