**UNITED STATES of America, Appellee,**

v.

**William Godfrey MIGELY, Defendant, Appellant.**

**No. 78–1434.**

United States Court of Appeals, First Circuit.

Argued March 7, 1979.

Decided April 18, 1979.

---

512

Nancy Gertner, Boston, Mass., with whom Silverglate, Gertner & Shapiro, Boston, Mass., Marcus S. Topel and Paul D. Wolf, San Francisco, Cal., were on brief, for defendant, appellant.

Robert B. Collings, First Asst. U. S. Atty., Chief, Crim. Div., Boston, Mass., with whom Edward F. Harrington, U. S. Atty., Boston, Mass., was on brief, for appellee.

Before ALDRICH and CAMPBELL, Circuit Judges, and GIGNOUX, District Judge.*

LEVIN H. CAMPBELL, Circuit Judge.

On February 13, 1978, William Godfrey Migely applied in Boston for a passport in the name of David Joseph Natta, a deceased infant, presenting a birth certificate and an Oregon driver's license. He was arrested when he returned and signed for the passport the following day, and was convicted of making a false statement in a passport application, 18 U.S.C. § 1542, after a court trial on stipulated facts.

Prior to trial, Migely unsuccessfully moved to suppress all evidence relating to use of the name David Joseph Natta. This motion was accompanied by claims that Migely's arrest had resulted from an illegal, warrantless search of his residence or mail, or else from the illegal inspection of the cover of a letter—i. e., a "mail cover"[1] —addressed to his home in Portland, Oregon. In connection with his motion to suppress Migely filed a motion for discovery of the occurrence of any searches made by means of mail covers or otherwise of mail sent to his home in Portland. The discovery request was granted, but the government's response, that there had been

* Sitting by designation.

1. Defendant uses the term "mail cover" as meaning covert examination of the outside of a piece of mail in transit. *See* 39 C.F.R. § 233.-2(c)(1). Such activity is claimed to constitute a

fourth amendment violation. *See United States v. Choate.* 422 F.Supp. 261 (C.D.Cal. 1976), *rev'd,* 576 F.2d 165 (9th Cir. 1978). We need not consider to what extent, if any, this may be so.

"no interception of mail or examination of letters placed in the mail either to or from residences owned or occupied by the defendant in connection with the investigation of the charge contained in the instant indictment,"

was ruled adequate by a federal magistrate. Migely still insisted that an illegal mail cover had occurred, however. He made a motion for further discovery, asking for information concerning any mail covers of mail delivered to his home in Portland, including covers instituted in connection with two West Coast passport fraud and drug violation cases involving him and one Dennis Kelly. This motion was denied at a motions hearing. During the hearing, the Assistant United States Attorney represented that no mail covers had occurred, and that this answer included "all of the investigation that was conducted, and whatever was done by the Government in connection with this Kelly case that has gone on on the West Coast." The prosecutor said that he had discussed the question with the agents involved, that, "No mail covers, searches were made," and that, "There were no surreptitious entries about which the Defendant has any standing to complain."

Migely then asked for an evidentiary hearing, with a view toward examining the agents involved and establishing that mail covers or searches in fact had occurred. The trial court denied this request, as well as the motions for further discovery and to suppress, indicating that it felt that Migely was on a fishing expedition.

Migely appeals on the ground that, "The district court erred in denying defendant's motion for an evidentiary hearing on his motion to suppress made pursuant to Rule 41(e) of the Federal Rules of Criminal Procedure." Although it is not clear that Migely's motion was in fact under Rule 41(e),[2] both parties point to cases decided under that rule as setting forth a standard for determining when a defendant is entitled to an evidentiary hearing, and we agree that the same standard would in any event be applicable here.

Evidentiary hearings on motions under Fed.R.Crim.P. 41(e) are not granted as a matter of course; they are required only when a defendant makes a sufficient showing that a warrantless search has occurred. The defendant must allege facts, "sufficiently definite, specific, detailed, and nonconjectural, to enable the court to conclude that a substantial claim is presented." *Cohen v. United States,* 378 F.2d 751, 761 (9th Cir.), *cert. denied,* 389 U.S. 897, 88 S.Ct. 217, 19 L.Ed.2d 215 (1967). The factual allegations must be such that, if proved, would require the grant of relief, *Grant v. United States,* 282 F.2d 165, 170 (1960), and must be more than "general and conclusory or based upon suspicion and conjecture." *Cohen,* 378 F.2d at 760; *accord, United States v. Poe,* 462 F.2d 195, 197 (5th Cir. 1972), *cert. denied,* 414 U.S. 845, 94 S.Ct. 107, 38 L.Ed.2d 83 (1973); *United States v. Thornton,* 147 U.S.App.D.C. 114, 124 n. 65, 454 F.2d 957, 967 n. 65 (1971); *United States v. Cranson,* 453 F.2d 123, 126–27 (4th Cir. 1971), *cert. denied,* 406 U.S. 909, 92 S.Ct. 1607, 31 L.Ed.2d 821 (1972); *cf. Lawn v. United States,* 355 U.S. 339, 348–49, 78 S.Ct. 311, 2 L.Ed.2d 321 (1958) (mere suspicions create no due process right to hearing on evidence presented to Grand Jury).

Migely's showing clearly falls short of meeting these standards. The allegations made in Migely's affidavits in support of his motion to discover and to suppress can be fairly summarized as follows: The FBI and the Drug Enforcement Administration had been investigating Dennis Kelly for possible passport violations involving the use of birth certificates of deceased infants. They had observed that Kelly was spending considerable time—and perhaps residing—at Migely's house in Portland, Oregon, and had kept the house under surveillance. In the spring of 1975 they had conducted a warrantless search of a warehouse rented by Kelly. That December, the De-

---

2. Neither of Migely's motions to suppress referred specifically to Rule 41(e)—as opposed to Rule 41 as a whole—or requested the return of any property.

partment of Vital Statistics in Portland sent, on request, the birth certificate of David Joseph Natta to Migely's house, which had a "flip-top" mail box. Within several days after the certificate was sent the government received a copy of Natta's death certificate from the Department of Vital Statistics. When Migely applied for the passport in Boston over two years later, a computer check was run and led to his arrest. The government's questioning of Migely immediately thereafter focused on the West Coast investigation of Kelly.

Migely asks us to infer from these facts that a mail search violating his fourth amendment rights must have occurred. But these facts are insufficient to create such an inference. The government could have learned that the Natta birth certificate had been sent to Migely's address in any number of conceivable legal ways, as well as through the methods hypothesized by Migely. (For example, an informer may have been involved.) Migely's theory of an unlawful search is no more than conjecture and speculation. Given the government's denial, an evidentiary hearing was not required. See *Cohen,* 378 F.2d at 760.

Migely urges that the government's denial was evasive and inadequate, and that it supported rather than precluded the need for an evidentiary hearing. He points out that the government limited its initial response to searches "in connection with . . . the instant indictment," and its response at the motions hearing to "entries about which the Defendant has standing to complain." Further, he objects to the district court's reliance on the prosecutor's oral representation that the government's response encompassed the West Coast investigation as well. Drawing an analogy to the standards used by some courts when electronic surveillance is alleged under 18 U.S.C. § 3504, Migely

argues that he is entitled to an evidentiary hearing because the government did not "squarely affirm or deny" his charges by affidavit. *See United States v. Vielguth,* 502 F.2d 1257, 1260 (9th Cir. 1974) (per curiam); *Korman v. United States,* 486 F.2d 926, 930–31 (7th Cir. 1973); *United States v. Alter,* 482 F.2d 1016, 1024–27 (9th Cir. 1973).

We do not agree that the government's response either raised or left open the possibility that a search or a mail cover had occurred. The government's written response, although limited to the "instant indictment," was broad enough to negate the possibility that the FBI had discovered that the Natta birth certificate was sent to Migely's home through an illegal search. Nor do we find the Assistant U.S. Attorney's reference to searches "about which Migely had standing to complain" objectionable. There had been a warrantless search of a warehouse rented by Kelly in the course of the West Coast investigation, and the Assistant United States Attorney stated during oral argument before this court that it was because of this event that he qualified his response. The government was adequately responsive to Migely's vague assertions that the elusive illegal search might have occurred in connection with the broader West Coast investigation; moreover, we see no reason to penalize it now because it did not respond in the form of an affidavit. Migely did not make a focused request that the government file an affidavit, nor did he maintain an objection based on the court's failure to require one. While the court could have imposed such a requirement as an exercise of its discretion, Migely's showing was not such that it abused its discretion by not doing so.[3]

*Affirmed.*

3. Migely overstates the extent of his legal right to insist that the government should have responded here in precisely the manner required when an aggrieved party makes a claim of electronic surveillance. The government's duty to "affirm or deny" the occurrence of electronic surveillance arises from a specific statute directed to that type of activity. 18 U.S.C. § 3504. A district court may doubtless, in its sound discretion, impose a similar duty to respond where a defendant makes a sufficiently credible claim of other governmental intrusions violative of the fourth amendment. As there is no statute, however, the court has greater latitude in determining when and how to proceed and what form of response to accept. Here the government made a denial of the illegal activities alleged, and we cannot say the district court abused its discretion in deeming the response sufficient both in form and in substance.