# United States Court of Appeals
## For the First Circuit

No. 09-1803

UNITED STATES OF AMERICA,

Appellee,

v.

TIMOTHY BROWN,

Defendant-Appellant.

ON APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. George A. O'Toole, Jr., U.S. District Judge]

Before

Boudin, Gajarsa,[*] and Thompson,
Circuit Judges.

Judith H. Mizner, Assistant Federal Public Defender, for appellant.
Kelly Begg Lawrence, Assistant U.S. Attorney, with whom Carmen M. Ortiz, U.S. Attorney, was on brief, for the appellee.

October 8, 2010

[*]Of the Federal Circuit, sitting by designation.

**THOMPSON, Circuit Judge**. Defendant Timothy Brown (Brown) was convicted on one count of possession of cocaine base with intent to distribute pursuant to 21 U.S.C. § 841(a)(1). Before this court, Brown appeals his conviction, arguing that the district court erred in denying both his suppression motion and his request for an evidentiary hearing. For the following reasons, we affirm.

**I. BACKGROUND**

At approximately 9:00 pm on the evening of March 9, 2007, Boston Police Department (BPD) Officer John Dineen (Dineen) and his partner, Detective Brian Waters (Waters), received information from their supervisor, Sergeant Thomas Joyce (Joyce), that Joyce had observed the front-seat passenger of a black Ford Taurus smoking a marijuana blunt. The front-seat passenger was later identified as the defendant, Brown.

After receiving this information from Joyce, Dineen and Waters, who were on patrol in an unmarked minivan, began to look for the vehicle. Soon thereafter, Dineen and Waters located the Taurus and followed it. Neither officer saw anyone smoking in the vehicle. When the Taurus stopped at a red light, the officers pulled up behind it, got out of their minivan, and ran to both the driver and passenger sides of the Taurus, displaying their badges. The minivan that Dineen and Waters were driving was not equipped with either a siren or lights. Dineen approached the driver's side of the Taurus and Waters, the passenger's side. Joyce, who had

-2-

since arrived on the scene, joined Waters on the passenger's side of the vehicle.

As Dineen and Waters got closer to the Taurus, they claimed to have smelled a strong odor of burnt marijuana. Though there is no statement from Waters in the record, Dineen testified that Waters saw Brown holding a "smoking blunt marijuana cigarette." When Dineen was at the driver's door, he knocked on the window, showed his police badge, and identified himself to the driver. At that point, the driver rolled down the window, and the odor of marijuana purportedly became even stronger. Although Dineen does not recall whether the Taurus's windows were open or closed as he initially approached it, he testified that the smell of burnt marijuana became stronger when the driver rolled down the window. In the midst of asking the driver for her license and registration, Dineen observed Waters and Joyce open the passenger-side door, take the burning marijuana cigarette from Brown's hand, and remove Brown from the Taurus. Waters and Joyce then arrested, handcuffed, and pat-frisked Brown. No contraband was found during the frisk. Following Brown's arrest, the Taurus was searched and towed.[1] During the search of the car, police officers recovered two cell phones and marijuana in the center console.

_____

[1]The driver of the Taurus was driving with a suspended license and also arrested. On appeal, the disposition of her individual case is not at issue.

Brown was placed in the back of a marked police cruiser for transport to the police station. En route, Dineen and Waters, who were following the cruiser in their minivan, observed Brown twisting and turning in the back seat. When Brown was removed from the police cruiser at the station, a clear plastic bag fell from his waist and onto the ground. The bag contained fifty-six small, individually wrapped packages of crack cocaine, also known as cocaine base. There were also two larger individually wrapped packages, for a total of approximately sixteen grams of crack cocaine. As Brown walked toward the booking entrance of the police station, Waters saw Brown drop a second plastic bag--it contained marijuana. During the booking process, a search of Brown's person revealed another bag of marijuana and $707 in cash.

Brown was charged in federal district court with possession with intent to distribute at least five grams of cocaine base pursuant to 21 U.S.C. § 841(a)(1). Brown subsequently moved to suppress the cocaine and other evidence retrieved by police officers as the fruits of an illegal seizure. He also requested an evidentiary hearing. Additionally, Brown argued that the warrantless stop of the Taurus violated his Fourth Amendment rights because the police lacked reasonable suspicion of criminal activity. Brown argued that Joyce's "mere observation" that Brown was smoking marijuana in the front seat of the Taurus was no more than a "naked hunch" and therefore did not provide adequate grounds

-4-

for reasonable suspicion and the subsequent stop of the Taurus by Dineen and Waters. Brown submitted that absent reasonable suspicion, the stop was an unconstitutional seizure in violation of the Fourth Amendment. In its opposition to Brown's Motion to Suppress, the government argued that the initial stop of the Taurus was not a seizure within the meaning of the Fourth Amendment because it was a consensual encounter and therefore was not subject to the requirement that it be based on reasonable suspicion. The government further argued that Brown was not entitled to an evidentiary hearing because he failed to submit any affidavits or other factual material to contest the record evidence.

On November 4, 2008, two months after the government filed its opposition to Brown's Motion to Suppress, it filed notice with the district court that it would not "be calling or relying [on] information provided by BPD Sgt. Thomas Joyce in any hearing in this matter." The government stated that because the evidence showed that there was no seizure of the Taurus or its occupants until after Dineen and Waters approached the vehicle and smelled marijuana for themselves, Joyce's testimony would "not affect the government's position or proof at suppression. Nor does it alter the government's belief that no evidentiary hearing is required based on the record before the Court."[2]

---

[2]The government's decision to forego reliance on Joyce's testimony was based on Joyce's suspension from active duty after he was arrested while on vacation.

Also on November 4, 2008, Brown filed a supplemental memorandum in support of his request for an evidentiary hearing. In his memorandum Brown claimed that (1) there was reason to doubt Joyce's observation that he saw Brown smoking marijuana because it was "impossible, visually, to distinguish a tobacco cigar from a 'blunt' that has been refilled with marijuana"; (2) Dineen's testimony that he could smell marijuana outside the car was "highly suspect and should be subject to crossexamination"; (3) the driver of the Taurus "denied that anyone was smoking marijuana" in the vehicle; (4) whether the stop amounted to a seizure under the Fourth Amendment was "highly fact-intensive and the reports and testimony [were] inconclusive," and (5) "[t]he only way to resolve th[e] issue [was] for the Court to hear evidence." Along with his memorandum, Brown submitted an affidavit of the defense investigator who interviewed the car's driver. The affidavit averred that the car's driver had "stated that nobody smoked marijuana in the car." The government opposed Brown's supplemental request for an evidentiary hearing. It argued that the affidavit of the defense investigator alone was insufficient to create a material factual dispute.

On November 17, 2008, the district court issued its opinion denying Brown's Motion to Suppress and Request for an Evidentiary Hearing. The court stated that its findings were based on the parties' submissions and were "not subject to genuine

dispute."  In denying the Motion to Suppress, the court first held that Joyce's observation that the passenger of a black Ford Taurus was smoking marijuana, which he directly relayed to Dineen and Waters, provided reasonable suspicion to justify stopping the car. Accordingly, the court determined that "even if [the officers'] approach to the Taurus and their identification of themselves to the occupants as police officers constituted a 'seizure' of the car for Fourth Amendment purposes, it was a lawful <u>Terry</u> investigative stop."[3]  The district court noted that the evidence suggested that Dineen and Waters smelled marijuana as they approached the Taurus, before the driver rolled down the car window, but nonetheless opined that the timing was "unimportant for present purposes." According to the district court, if indeed Dineen and Waters smelled marijuana before the driver rolled down the window, "it would have confirmed their existing suspicion, but the existing suspicion based on Joyce's direct observations that had been conveyed to them was sufficient by itself to justify an investigative stop."

Alternatively, the court held that the officers' approach to the Taurus, when it was already stopped at a traffic light, was not a "seizure" under the Fourth Amendment.  Regardless of the

---

[3]In <u>Terry</u> v. <u>Ohio</u>, 392 U.S. 1, 30 (1968), the Supreme Court held that a police officer may initiate a brief investigatory stop "where [he] observes unusual conduct which leads him reasonably to conclude in light of his experience that criminal activity may be afoot."

theory relied upon, namely whether the officers' initial approach to the car was justified by reasonable suspicion based on Joyce's observations or whether it was a consensual encounter not subject to the protections of the Fourth Amendment, the court held that once the driver opened the car window and Dineen smelled marijuana, that act "provided probable cause for the seizure both of the smoking blunt and Brown's person."

Lastly, the court held that an evidentiary hearing was not required because Brown had "not made a proffer of any evidence that would controvert the basic facts of the encounter as related by the police or justify a different conclusion." While the court acknowledged the affidavit of the defense investigator, which Brown had submitted, the court declined to afford it much weight. According to the court, "the indirect method of conveying that proffer suggests strongly that the driver is not willing to become an affiant herself and say the same thing to the Court under oath, subject to the penalties of perjury." Consequently, the court concluded that Brown's proffer did not amount to a "sufficient threshold showing that material facts [were] in doubt or dispute, and that such facts [could not] reliably be resolved on a paper record."

Brown filed a motion for reconsideration of the court's denial of his request for an evidentiary hearing. In support of his motion, Brown included an affidavit from the back-seat

-8-

passenger of the Taurus which stated that "[n]obody smoked marijuana in the car at any time on that evening." Brown argued that the affidavit of the back-seat passenger, which was signed by the passenger himself, along with the affidavit of the defense investigator, created material issues of fact about whether Joyce's observation that Brown was smoking marijuana was credible and whether reasonable suspicion to seize the car and its occupants actually existed. The court denied the motion on February 2, 2009. On the same day, a jury trial commenced. At the conclusion of a four-day trial, the jury found Brown guilty. On May 26, 2009, the district court sentenced Brown to 180 months' imprisonment, followed by five years' supervised release. This appeal followed.[4]

On appeal, Brown first argues that the district court erred in finding that Joyce's observations provided officers Dineen and Waters with reasonable suspicion to stop the Taurus. Brown argues that because the government notified the court that it would not rely on the information provided by Joyce, the court should have evaluated the sufficiency of the government's evidence without that information. According to Brown, absent Joyce's statement

---

[4]On appeal, Brown does not argue that the district court abused its discretion in denying his motion for reconsideration, nor does he rely on the affidavit submitted with that particular motion in his brief. Consequently, he has waived any challenge to the court's denial of his motion for reconsideration. See Seale v. INS, 323 F.3d 150, 152 n.1 (1st Cir. 2003).

that he observed Brown smoking a marijuana blunt, Dineen and Waters lacked reasonable suspicion to stop the Taurus.

Next, Brown contends that even considering Joyce's observations, reasonable suspicion was still lacking. Brown argues that the reported observation of an individual smoking a "blunt marijuana cigarette," absent any evidence of the detection of odor or other suspicious activity, and evaluated in conjunction with (1) the testimony of an officer that visual observation is insufficient to distinguish between a tobacco filled blunt and a marijuana filled blunt and (2) the absence of any observations of smoking or suspicious activity by Dineen and Waters, is insufficient to justify the stop.

Third, Brown asserts that the Taurus and its occupants were seized prior to the time when the driver rolled down the window. Brown submits that the facts of this case--two officers exiting their vehicle in the middle of an intersection, running to either side of a vehicle stopped at a red light, displaying their badges, knocking on the window, and the vehicle remaining stopped--show a submission to the display of authority necessary to constitute a "seizure" for Fourth Amendment purposes.

Lastly, Brown submits that even assuming the paper record were sufficient to support a finding of reasonable suspicion, the district court nonetheless erred in denying Brown's request for an evidentiary hearing. Brown asserts that there were material facts

in dispute and that reliance on Joyce's observations required evidence of their reliability. We will address these arguments in turn. We begin with the applicable legal framework.[5]

II.       DISCUSSION

A.        Motion to Suppress

1.        Standard of Review

"In an appeal from a suppression order, we review the district court's legal conclusions de novo." United States v.

---

[5]Brown submitted two supplemental briefs, pro se, to this court pursuant to Fed. R. App. P. 28(j) and 10(e)(2). While Brown's pro se submissions were procedurally sound, we find that they are nonetheless substantively deficient. Brown's first argument is that the district court erred in treating him as a career offender because the fact of his prior convictions was not proven to a jury beyond a reasonable doubt. That argument is "hopeless." United States v. Richards, 456 F.3d 260, 262 (1st Cir. 2006). Prior convictions may be treated as sentencing factors even when they "trigger[] an increase in the maximum permissive sentence" to which the defendant is exposed. Almendarez-Torres v. United States, 523 U.S. 224, 244 (1998). Here, the district court correctly identified the guideline range for Brown as a career offender (262-324 months) and correctly treated that range as advisory (imposing a sentence of 180 months). Next, Brown argues that Dineen's testimony of Joyce's alleged observations constituted hearsay and thus was improperly admitted into evidence. However, it is well-settled that "hearsay testimony is admissible at suppression hearings." United States v. Miramonted, 365 F.3d 902, 904 (10th Cir. 2004)(citing United States v. Matlock, 415 U.S. 164, 173 (1974)); see also Fed. R. Evid. 104(a). Lastly, Brown contests the admission of certain lab reports as a violation of the Confrontation Clause because the lab chemist was not available for cross-examination. However, the lab reports were never admitted into evidence. Instead, the information concerning drug type and weight was provided to the jury in the form of a joint stipulation signed by Brown and the government. Accordingly, this argument is without merit.

-11-

Barnes, 506 F.3d 58, 61-62 (1st Cir. 2007)(citing Ornelas v. United States, 517 U.S. 690, 699 (1996)). "[Underlying] factual findings are reviewed for clear error, giv[ing] due weight to inferences drawn from those facts by resident judges and local law enforcement officers." Id. at 62 (internal quotation marks and citation omitted). A factual finding is clearly erroneous "only if, after considering all the evidence, we are left with a definite and firm conviction that a mistake has been made." United States v. McCarthy, 77 F.3d 522, 529 (1st Cir. 1996). Accordingly, we must bear in mind that when more than one logical interpretation of the evidence exists, the factfinder's ultimate conclusion cannot be declared clearly erroneous. See United States v. Espinoza, 490 F.3d 41, 46 (1st Cir. 2007). Consequently, "if the district court chooses to draw a reasonable (though not inevitable) inference from a particular combination of facts, that inference is entitled to deference." Id.

## 2. Reasonable Suspicion

"A finding of reasonable suspicion requires a particularized and objective basis for suspecting the person stopped of criminal activity." Id. at 47 (internal quotation marks and citations omitted). "Th[e] particularity requirement means, in effect, that such a finding must be 'grounded in specific and articulable facts.'" Id. (quoting United States v. Hensley, 469 U.S. 221, 229 (1985)). While "officers may draw on their own

-12-

experience and specialized training to make inferences from and deductions about the cumulative information available to them . . . a mere hunch does not rise to reasonable suspicion." Barnes, 506 F.3d at 62 (internal quotation marks and citation omitted).

As an initial matter, Brown submits that it was error for the district court to rely on Joyce's reported observations as a basis for establishing reasonable suspicion because the government had previously informed the court that it would not be relying on any information provided by Joyce. Brown argues that absent Joyce's reported observation, there was no factual support for a finding of reasonable suspicion.

Brown is correct in his assertion that absent reliance on Joyce's observations there would be no factual grounds to support a finding of reasonable suspicion--Dineen and Waters observed no suspicious activity on their own. However, the district court was not prevented from considering Joyce's observations, to the extent the court determined them to be supported by the record. See DeCaire v. Mukasey, 530 F.3d 1, 20 n.11 (1st. Cir. 2008)(stating that district court may rely on theory not advanced by either party because "[j]udges, like juries, may draw inferences, so long as they are supported by the evidence"). The record here supports the district court's finding that Joyce observed Brown, who was the front-seat passenger in the Taurus, smoking what Joyce believed to

be a marijuana blunt and that Joyce thereafter communicated his observation with Dineen and Waters.[6]  There was no error.

Next, Brown argues that even if reliance on Joyce's observations were permissible, the district court nonetheless erred in holding that Joyce's observations were sufficient to provide reasonable suspicion for the stop.  Brown submits that the incident report prepared by Joyce, which states that Joyce "did observe the front passenger Brown smoking a blunt marijuana cigarette," is at best "a constitutionally inadequate hunch."

The district court found that this "central premise" of Brown's argument was "false."  More specifically, the district court found that Joyce personally observed Brown smoking a small cigar in the distinctive manner that marijuana is smoked: holding one's breath after taking a drag from the blunt that was being held between the forefinger and thumb.  This finding is supported by the record.  Nonetheless, Brown submits that Joyce's observation should be discredited because (1) it is not possible to visually differentiate between a marijuana blunt and a tobacco blunt and (2) Joyce allegedly did not tell Dineen about his specific observations, namely the manner in which Brown held and smoked the blunt, until after Brown was arrested.

_____

[6] The record before the district court included Joyce's police report of the incident, Dineen's sworn testimony before the federal grand jury and at the probable cause/detention hearing, as well as Dineen's affidavit in support of the criminal complaint.  For a more thorough discussion of the record evidence before the district court, see infra pp. 14-16.

As support for his first contention, Brown relies entirely on Dineen's probable cause/detention hearing testimony. On cross-examination, Dineen acknowledged that there was no way to know whether a blunt contained tobacco or marijuana unless one were to actually smell the contents of the blunt. We think Brown is attempting to make a mountain out of a mole hill. Read in context, it is clear that what Dineen meant was that absent any other evidence, such as smell, it would be impossible to determine with certainty the exact contents of the blunt. On review of the record, it is clear that this single piece of testimony does not discredit Joyce's reported observation. Indeed, Dineen testified before the grand jury that Joyce reported to him that Joyce observed Brown holding the blunt tightly between his index finger and thumb and inhaling deeply without immediately exhaling. Dineen further testified that based on his training and experience, the reported observations of Joyce were consistent with marijuana smoking. It is well-established that the observations of experienced law enforcement officers are entitled to deference. See United States v. Dubose, 579 F.3d 117, 121 (1st Cir. 2009); see also United States v. Ruidiaz, 529 F.3d 25, 29 (1st Cir. 2008)(determination of reasonable suspicion "requires a practical, commonsense determination--a determination that entails a measurable degree of deference to the perceptions of experienced law enforcement officers")(internal citation omitted).

Furthermore, an important concept that Brown conveniently fails to consider is that Joyce's observation did not have to be correct to constitute reasonable suspicion. Constitutionally, all that is required is a "reasonable and articulable suspicion of criminal activity." United States v. Chhien, 266 F.3d 1, 6 (1st Cir. 2001). Joyce's observations, as stated in his police report and through Dineen's testimony, suffice to pass this test. Cf. Rivera v. Murphy, 979 F.2d 259, 262-264 (1st Cir. 1992)(no reasonable suspicion where police officer's affidavit stated only that "I observed the Plaintiff . . . involved in what I believed to be a drug transaction based on my observations, training, and experience . . . .").

Brown's second contention, concerning the exact timing of when Joyce communicated his observations to Dineen, whether before Brown's arrest or at some later point, is immaterial based on the "collective knowledge" doctrine. Under this principle, our "focus is upon the collective knowledge possessed by, and the aggregate information available to, all the officers involved in the investigation." United States v. Winchenbach, 197 F.3d 548, 555 (1st Cir. 1999). In this circuit, we have recognized the collective knowledge doctrine as a legitimate means through which reasonable suspicion may be established. See Barnes, 506 F.3d at 62. Based on the district court's finding that Joyce observed Brown smoking marijuana in the Taurus, a finding we have determined is not clearly erroneous, the district court properly held that the

-16-

officers had reasonable suspicion for the stop. Accordingly, "[w]hile the information available to [Joyce] does not irrefutably establish that [Brown was smoking marijuana], it provided a reasonable basis for his suspicions. No more is required to justify the officers' collective decision [to stop the Taurus and investigate further]." United States v. Cook, 277 F.3d 82, 87 (1st Cir. 2002).

On appeal, our function is limited to the determination of whether the district court's factual findings and the inferences made from those findings, which formed the basis of its conclusion that reasonable suspicion existed to stop the Taurus, are plausible and find support in the record. Espinoza, 490 F.3d at 47-48. Though the district court's factual findings are not compelled by the record, nor are its inferences compelled by the facts, we think that both are nonetheless reasonable and therefore pass constitutional muster. See id.

**3.  Seizure**

Our affirmance of the district court's finding that Dineen and Waters had reasonable suspicion to stop the Taurus forecloses our need to address Brown's challenge to the district court's alternate conclusion that the Taurus was not seized when the officers first approached. Because Dineen and Waters were acting with reasonable suspicion, even if their initial approach to the Taurus constituted a "seizure" for purposes of the Fourth Amendment, it was constitutionally permissible. See Espinoza, 490

-17-

F.3d at 48 (citing <u>United States</u> v. <u>Arvizu</u>, 534 U.S. 266, 273 (2002)).

**B.      Request for Evidentiary Hearing**

Brown's last argument on appeal is that the district court erred in denying his Motion to Suppress evidence without an evidentiary hearing.  As an initial matter, the decision of whether to conduct an evidentiary hearing is left to the sound discretion of the district court.  <u>United States</u> v. <u>Calderon</u>, 77 F.3d 6, 9 (1st Cir. 1996).  On appeal, our review is for an abuse of that discretion.  <u>Id.</u>

"[A] criminal defendant has no absolute or presumptive right to insist that the district court take testimony on every motion."  <u>United States</u> v. <u>Panitz</u>, 907 F.2d 1267, 1273 (1st Cir. 1990).  Accordingly, evidentiary hearings are only required when a defendant makes "a sufficient showing that a warrantless search has occurred."  <u>United States</u> v. <u>Lewis</u>, 40 F.3d 1325, 1332 (1st Cir. 1994)(citing <u>United States</u> v. <u>Migely</u>, 596 F.2d 511, 513 (1st Cir. 1979)).  A sufficient showing is made when the defendant "allege[s] facts sufficiently definite, specific, detailed, and nonconjectural, to enable the court to conclude that a substantial claim is presented."  <u>Migely</u>, 596 F.2d at 513 (internal quotation marks and citation omitted).  "Most importantly, the defendant must show that there are factual disputes which, if resolved in his

-18-

favor, would entitle him to the requested relief." United States v. Staula, 80 F.3d 596, 603 (1st Cir. 1996).

Brown argues that an evidentiary hearing was necessary for two reasons: (1) to evaluate the credibility of Joyce's alleged observation in order to determine if reasonable suspicion actually existed and (2) to develop additional facts surrounding the stop of the Taurus to determine if, and when, a seizure occurred. In regard to the first argument, Brown contends that a hearing was necessary to resolve two alleged factual disputes: (1) Joyce's purported observation that he saw Brown smoking a marijuana blunt as opposed to Dineen's testimony that "visual observation was not sufficient to determine the contents of a blunt" and (2) Joyce's alleged observation that Brown was smoking marijuana, along with Dineen's testimony that he smelled marijuana coming from the car as he approached on foot, as opposed to the affidavit of the defense investigator stating that the car's driver claimed that no one was smoking marijuana in the car.

In regard to the first alleged factual dispute concerning reasonable suspicion and Joyce's credibility, we do not believe that Dineen's testimony, taken as a whole, contradicts Joyce's alleged observation. On cross-examination the following colloquy took place:

> [Defense Counsel]: So unless one were to actually smell what is coming out of the

-19-

blunt, there's no way to know what exactly is contained in the blunt, is it?

[Dineen]: No sir.

Brown submits that Dineen's answer proves that Joyce's purported observations were nothing more than "inadequate hunche[s]" and accordingly, that there was no reasonable suspicion for the stop. We disagree. Our review of the record shows that Dineen's entire sworn testimony, which was properly before the court, was not as limited as Brown interprets it to be. Before the grand jury, Dineen testified that Joyce, in addition to observing the appearance of the blunt, had observed the manner in which Brown held and smoked the blunt--between his forefinger and thumb and inhaling, but not immediately exhaling like one would a cigarette. Dineen further testified that based on his training and experience, the manner in which Joyce relayed that the blunt was being held and smoked was consistent with marijuana smoking. With the full record of Dineen's sworn testimony before it, along with Joyce's police report which stated that Joyce "observed the front passenger Brown smoking a blunt marijuana cigarette," we can by no means say that the district court abused its discretion in denying Brown's request for an evidentiary hearing.

Similarly, we do not believe that the district court abused its discretion in resolving the alleged factual dispute concerning whether marijuana was smoked inside the Taurus without an evidentiary hearing. While Brown submits that the affidavit

-20-

from the defense investigator created a disputed material fact requiring a hearing, the district court was not obliged to afford the affidavit the amount of significance Brown submits it should have. In its Opinion and Order, the district court stated that

> I accept as true that the driver said that [nobody smoked marijuana in the car] to the investigator. However, the indirect method of conveying that proffer suggests strongly that the driver is not willing to become an affiant herself and say the same thing to the Court under oath, subject to the penalties for perjury.

The reasoning given by the district court is sound. When faced with a single, second-hand statement from the car's driver, against the consistent, sworn testimony of Dineen, the court's conclusion that Brown's "meager and cautiously indirect proffer" did not merit an evidentiary hearing was not an abuse of discretion. See Lewis, 40 F.3d at 1332 (holding that no evidentiary hearing was required where defendant's only affidavit was prepared by his attorney who had no first-hand knowledge of the events and government's evidence consisted of sworn affidavits of investigating officers); see also Calderon, 77 F.3d at 9 (holding no evidentiary hearing required where defendant did not offer affidavit of person on whom he relied to establish disputed fact, did not describe the circumstances supporting his assertion, made no proffer of proof relative to any other facts that might support his assertion, and where government provided competent evidence to support the district court's finding).

Brown's second contention as to why an evidentiary hearing was necessary concerns the district court's finding that the officers' initial encounter with the Taurus was not a seizure under the Fourth Amendment. Brown submits that a hearing was necessary in order to develop additional facts about the stop that might lead to a contrary conclusion--that the stop was indeed a seizure. We disagree. While the court certainly could have held a hearing to ferret out the underlying facts, which may or may not have been favorable to Brown, it was by no means under any obligation to do so. See Staula, 80 F.3d at 604 (holding that an evidentiary hearing was not required to "smoke[] out the truth" regarding the officer's motive for searching defendant's truck); see also United States v. LaBonte, 70 F.3d 1396, 1412-1413 (1st Cir. 1995)(stating that the district court need not convene an evidentiary hearing when presented with "no more than conclusory prognostications and perfervid rhetoric"), rev'd on other grounds, 520 U.S. 751 (1997).

We think that the facts contained in the paper record before the district court, which it found were "not subject to genuine dispute," as well as this circuit's precedent, which the district court cited, see, e.g., United States v. Ford, 548 F.3d 1, 6 (1st Cir. 2008), provided ample support for the court's finding that the initial encounter between Dineen, Waters, and the Taurus was not a seizure. There was no abuse of discretion.

-22-

**IV.     CONCLUSION**

For all of the foregoing reasons, the decision of the district court is <u>affirmed</u>.