# United States Court of Appeals
## For the First Circuit

No. 11-1625

UNITED STATES OF AMERICA,

Appellee,

v.

MOISES CINTRON,

Defendant-Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS
[Hon. Nathaniel M. Gorton, U.S. District Judge]

Before

Howard, Circuit Judge,
Souter,* Associate Justice,
and Torresen,** District Judge.

Page Kelley, Office of the Federal Public Defender, with whom Rheba Rutkowski, Assistant Federal Public Defender, was on brief for appellant.
David M. Lieberman, U.S. Dept. Of Justice, with whom Carmen M. Ortiz, United States Attorney, Lanny A. Breuer, Assistant Attorney General, and John D. Buretta, Deputy Assistant Attorney General, were on brief for appellees.

July 19, 2013

---

*Hon. David H. Souter, Associate Justice (Ret.) of the Supreme Court of the United States, sitting by designation.

**Of the District of Maine, sitting by designation

**TORRESEN, District Judge.** Appellant Moises Cintron entered a conditional guilty plea to a single-count indictment charging him with being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). Cintron preserved his right to appeal the denial of his motions to suppress the firearm seized from him during a lawful traffic stop.[1] On appeal, Cintron argues that the district court abused its discretion by denying his first motion to reconsider and second motion to suppress without holding an evidentiary hearing. For the reasons set forth below, we affirm the district court.

## BACKGROUND

On November 5, 2007, Massachusetts State Police Trooper Richard Gaudet observed a Nissan Maxima driving erratically on Route 128 in Lynnfield, Massachusetts. Trooper Gaudet activated his lights and signaled the driver to stop. The car came to a halt in the middle of the passing lane of the busy highway. Trooper Gaudet, joined by Trooper Stevie Browning and Sergeant James Deyermond, approached the car and discovered a female driver, a young girl in the passenger seat, and Cintron draped

---

[1]Although Cintron filed a motion to suppress the gun and statements made after his arrest, a motion to reconsider this motion, a second motion to suppress the gun, and a motion to reconsider the second motion to suppress, only the denial of the second motion to suppress and the motion to reconsider the first motion to suppress were preserved for appeal.

-2-

across the backseat either asleep or unconscious.

While Trooper Browning spoke with the driver, Sergeant Deyermond tried to rouse Cintron, first banging on the back passenger-side window, then opening the door and shaking him. When Cintron awoke, Sergeant Deyermond helped him out of the car. During this process, which took only minutes, Trooper Gaudet noticed a gun protruding from Cintron's pocket. Once the gun was secured, Cintron was arrested and taken back to the station where he made some incriminating statements. Cintron was ultimately charged with being a felon in possession of a firearm.

In July of 2008, Cintron's first court-appointed attorney filed a motion to suppress the gun and the statements that Cintron made at the station. In support of the motion, court-appointed counsel filed an affidavit sworn to by Cintron stating that he had not consented to the roadside stop or search. Three days after the motion to suppress was filed, Cintron's second lawyer – this one retained – entered an appearance in the case.[2]

_____

[2]Cintron had three attorneys during the course of the underlying proceedings: the first was a court-appointed attorney; the second was counsel Cintron retained; and the third was the federal defender appointed to represent Cintron after his retained counsel withdrew. The opinion will refer to the lawyers as "court appointed," "retained," and "federal defender" to help the reader keep the players straight.

On August 15, 2008, the government filed its opposition to the motion to suppress, attaching, among other items, Trooper Browning's arrest report and Trooper Gaudet's Supplemental Report and affidavit. Trooper Browning's arrest report stated that while he was talking to the driver of the car, Trooper Gaudet and Sergeant Deyermond were helping Cintron out of the car. Trooper Browning heard Trooper Gaudet yell "gun!" and saw Trooper Gaudet take a gun out of Cintron's jacket pocket. In his report and affidavit, Trooper Gaudet gave an account that was consistent with Trooper Browning's. Trooper Gaudet saw a gun coming out of Cintron's left jacket pocket as Cintron started to get out of the car. Trooper Gaudet ran over to the passenger side of the car and grabbed the gun from Cintron's pocket.

On November 26, 2008, Cintron's retained counsel averred in an affidavit that a drug recognition expert evaluated Cintron at the station after his arrest and concluded that Cintron was under the influence of a narcotic analgesic. Retained counsel argued that Cintron could not have voluntarily waived his Miranda rights given his impaired condition.

On December 15, 2008, the district court denied Cintron's motion to suppress the gun without a hearing, concluding that the seizure was justified under the plain view doctrine because the affidavits established that Trooper Gaudet

-4-

saw the gun protruding from Cintron's pocket before it was seized. See Coolidge v. New Hampshire, 403 U.S. 443, 465 (1971). The district court scheduled an evidentiary hearing to determine whether Cintron had voluntarily waived his Miranda rights. During the hearing, Officer Scott Frost, the drug recognition expert who evaluated Cintron at the police station, testified about Cintron's condition. The district court judge found:

> During questioning by Frost, Cintron admitted to snorting a line of heroin earlier that morning and Frost observed a number of characteristics that he considered consistent with heroin use. During the interview Cintron repeatedly fell asleep between questions and fell back against the wall or to the side. Cintron also had difficulty keeping his eyes open and his speech was slurred. According to Frost, Cintron physically appeared "out of it."

United States v. Cintron, No. 07-10435-NMG, 2009 WL 924423, at *1 (D. Mass. April 1, 2009). Concerned about Cintron's "inability to stay awake, slurred speech and lack of balance and coordination," id. at *3, the district court nevertheless found that Cintron had knowingly waived his Miranda rights and denied Cintron's motion to suppress his statements.[3]

---

[3]The district court focused on the facts that Cintron was capable of answering questions, that he was attempting to broker a deal, and that Cintron was familiar with the criminal justice system having been arraigned on 64 charges as an adult and 19 charges as a juvenile.

In June of 2009, pursuant to the Government's discovery obligations, the Assistant United States Attorney sent two letters to Cintron's retained counsel notifying him of inconsistencies in the troopers' accounts of the arrest which had emerged during trial preparations. Contrary to Trooper Gaudet's account that the gun was protruding from Cintron's left jacket pocket, both Trooper Browning and Sergeant Deyermond stated that they observed the gun in Cintron's right jacket pocket. Trooper Gaudet added to his account that after he first observed the gun, he attempted to enter the driver-side back door to retrieve the gun and when that was unsuccessful he ran around the car to assist Sergeant Deyermond.

In July of 2009, Cintron's retained counsel withdrew and an assistant federal defender was appointed. In August of 2009, Cintron wrote two letters to the Court in which he claimed that his retained counsel had filed the motion to suppress statements without his agreement. Cintron also told the district judge that he was not under the influence of drugs at the time of his arrest.

The government sent a third letter on August 21, 2009, this time to the recently appointed federal defender, indicating that Sergeant Deyermond, after reviewing reports, recalled that

he observed the firearm in Cintron's left jacket pocket.[4]

On February 25, 2010, the federal defender filed a motion to reconsider Cintron's first motion to suppress based on the changes in the accounts of the police officers. On February 26, 2010, the federal defender filed a second motion to suppress the firearm. In support of both motions, the federal defender submitted the various police reports describing the stop, the affidavit of Trooper Gaudet, the government letters, and the testimony of Trooper Browning at the hearing on Cintron's first motion to suppress. In support of the second motion to suppress, the federal defender submitted a new affidavit in which Cintron averred that the gun was in his buttoned right pocket and was not visible and that the troopers did not discover the gun in his pocket until after they had frisked him. The federal defender also submitted photographs of: 1) Cintron's jacket; 2) a gun similar to the one possessed by Cintron; 3) the jacket containing the gun in a pocket lying on a table; and 4) a model wearing the jacket containing the gun in the pocket. The gun does not protrude from the pocket in either of the latter two photographs.

The federal defender requested evidentiary hearings on

---

[4]The Court will refer collectively to the three letters from the Assistant United States Attorney to defense counsel as "the government letters."

both motions. The district court held a non-evidentiary hearing on the motions on April 15, 2010. On April 26, 2010, the district court issued a memorandum and order denying the motions and concluding that no evidentiary hearing was necessary. Not persuaded by the federal defender's assertion that retained counsel had advanced a poor legal theory against Cintron's wishes, the district court refused to treat Cintron's second affidavit as newly discovered evidence.[5] The district court judge found that "the timing and circumstances" of Cintron's second affidavit were so suspect that he declined to credit it over the officers' consistent accounts. United States v. Cintron, 708 F. Supp. 2d 92, 94 (D. Mass. 2010). Finding that the government letters did not materially alter the troopers' accounts of the stop, the court found no basis to revisit the holding that the gun was in plain view before it was seized. The district court concluded that the appointment of new counsel did not give Cintron the right to a "fresh start toward suppression"

---

[5]A district court may grant a motion for reconsideration "if the moving party presents newly discovered evidence, if there has been an intervening change in the law, or if the movant can demonstrate that the original decision was based on a manifest error of law or was clearly unjust." United States v. Allen, 573 F.3d 42, 53 (1st Cir. 2009). Newly discovered evidence that requires a district court to reconsider its decision is evidence that could not "in the exercise of due diligence" have been presented earlier. Emmanuel v. Int'l Bhd. of Teamsters, Local Union No. 25, 426 F.3d 416, 422 (1st Cir. 2005)).

and did not explain why Cintron had waited sixteen months to contest Trooper Gaudet's account.  Id.

On appeal, Cintron claims that he made a threshold showing sufficient to place in doubt the troopers' account that they saw the gun before they conducted the frisk, and he argues that the district court abused its discretion by not holding an evidentiary hearing on Cintron's second motion to suppress and his motion to reconsider his first motion to suppress.

**Relevant Law**

A criminal defendant has no presumptive right to an evidentiary hearing on a motion to suppress.  United States v. D'Andrea, 648 F.3d 1, 5 (1st Cir. 2011).  "Rather, '[a] hearing is required only if the movant makes a sufficient threshold showing that material facts are in doubt or dispute, and that such facts cannot reliably be resolved on a paper record.  Most importantly, the defendant must show that there are factual disputes which, if resolved in his favor, would entitle him to the requested relief.'"  United States v. Francois, 715 F.3d 21, 32 (1st Cir. 2013) (alteration in original) (quoting United States v. Staula, 80 F.3d 596, 603 (1st Cir. 1996)).

To obtain an evidentiary hearing, a defendant challenging a warrantless search must make a sufficient threshold showing that no exception to the warrant requirement applied to

the search.  <u>Allen</u>, 573 F.3d at 51.  "The burden is on the defendant to allege facts, 'sufficiently definite, specific, detailed, and nonconjectural, to enable the court to conclude that a substantial claim is presented.'"  <u>United States</u> v. <u>Calderon</u>, 77 F.3d 6, 9 (1st Cir. 1996)(quoting <u>United States</u> v. <u>Lewis</u>, 40 F.3d 1325, 1332 (1st Cir. 1994)). "[T]he decision of whether to conduct an evidentiary hearing is left to the sound discretion of the district court.  On appeal, our review is for an abuse of that discretion."  <u>United States</u> v. <u>Brown</u>, 621 F.3d 48, 57 (1st Cir. 2010) (internal citation omitted).

## Analysis

To obtain an evidentiary hearing on his second motion to suppress, Cintron was required to demonstrate specific facts that plausibly suggested that the troopers did not see the gun in plain view.  <u>Allen</u>, 573 F.3d at 51.  The district court concluded that Cintron did not make that threshold showing and that material facts pertaining to the motion to suppress were not in dispute.  We agree.

### A.  The Government Letters Were Not Materially Inconsistent

The district court's denial of Cintron's first motion to suppress the gun relied on the fact that Trooper Gaudet saw the gun protruding from Cintron's pocket before he seized it.  In

-10-

deciding Cintron's second motion to suppress and motion for reconsideration, the district court reasonably concluded that none of the changes in the troopers' stories during trial preparation altered this dispositive fact. Trooper Gaudet consistently said that he saw the gun in Cintron's left jacket pocket when Cintron was getting out of the car. Neither Trooper Gaudet's later statement that he tried to open the back driver-side door before he ran around to the other side of the car nor Trooper Browning's recollection that Trooper Gaudet called out "gun!" when he was on the passenger side of the car undermines Trooper Gaudet's recollection that he saw the gun before Cintron was frisked.

Sergeant Deyermond and Trooper Browning both corroborated Trooper Gaudet's recollection that he ran over to the passenger side to help Sergeant Deyermond pull Cintron out of the car and grabbed the gun then. As for the confusion about the location of the gun, Trooper Browning qualified his statement during trial preparation that he "did not remember exactly" but that he thought the gun was in the right pocket. Sergeant Deyermond initially thought the gun was in the right pocket, but after reviewing the reports, recalled that the gun was in Cintron's left pocket. Considering that Cintron's arrest took minutes, and the trial preparation occurred nineteen to twenty

months after the arrest, the inconsistencies in the troopers'
stories were understandable and immaterial.

### B.    Cintron's Second Affidavit and Photos

The district court reasonably concluded that Cintron's
affidavit was untimely and not credible.

### 1.    The Timing and Circumstances

The district court rejected Cintron's second affidavit
as a last-minute, self-serving change in strategy.  Cintron's
version of the arrest was always available to him, and the
district court made no error in rejecting this account which was
raised so late in the game. See United States v. Allen, 573 F.3d
42, 54 (1st Cir. 2009).

Cintron blames his retained counsel for failing to
contest Trooper Gaudet's account of the arrest and for pursuing a
futile strategy of seeking to suppress his statements.  The
record is insufficiently developed for us to meaningfully review
retained counsel's strategy and the effectiveness of his
representation, and Cintron has not formally raised an
ineffective assistance of counsel claim.   See, e.g., United
States v. Theodore, 354 F.3d 1, 3 (1st Cir. 2003) ("We note that
the almost universal rule . . . is that petitioners cannot raise
ineffective assistance of counsel claims for the first time on
direct review, the concern being that there is often no

opportunity to develop the necessary evidence where the claim is first raised on direct appeal.").

Cintron cites his letters to the district court judge in August of 2009 as evidence that his retained counsel acted against his wishes in not presenting Cintron's account of the arrest to the district court. In his letters to the judge, Cintron complains about his retained counsel's performance, but he does not claim that the gun was buttoned in his right-hand pocket and not visible to the police. Cintron never claims that the police violated his constitutional rights. What he does claim is that he was innocent.

The federal defender claims that Cintron's account of the gun's seizure has been the same since the day they first met. But the federal defender came on board after Cintron's first attempt at suppression had failed. To point out that Cintron has been consistent since he learned that his first strategy failed is very different from saying that Cintron has been consistent since the date of his arrest. It was reasonable for the district court to view Cintron's affidavit with skepticism and to discount the federal defender's representation that Cintron's story has been consistent throughout their relationship.

The district court is not limited to the four corners of the defendant's motions, affidavit, and exhibits in assessing

the weight to give the defendant's affidavit. The district court can rely on information that it has obtained from previous motions and from other sources, including the defendant's letters to the court, in determining whether an affidavit should be credited. See Awon v. United States, 308 F.3d 133, 141 (1st Cir. 2002) (district court correctly rejected convicted co-defendant's post-trial affidavit averring unbelievable story exonerating defendant because affidavit was "lacking in credibility for reasons apparent on its face and from the record"); see also Brown, 621 F.3d at 58-59 (district court appropriately gave minimal weight to affidavit from defense investigator containing indirect witness testimony conflicting with consistent officer testimony).

Cintron's ability to perceive and remember the seizure of the gun was suspect. The evidence before the district court, including the testimony of the drug recognition expert at the hearing on Cintron's first motion to suppress, strongly suggested that Cintron was severely impaired when the gun was seized. The district court was not required to turn a blind eye to the testimony that Cintron was difficult to rouse when first encountered, that he admitted to using heroin that morning, and that he was showing multiple signs of being under the influence of heroin. The defendant's self-serving claim in the August 2009

-14-

letter to the judge that he was not impaired at the time of his arrest, despite all the evidence to the contrary, only undermined the credibility and reliability of his second affidavit wherein he recounted details of his arrest. Here, the district court had good reason to question Cintron's ability to perceive his own arrest and had a basis to doubt Cintron's credibility in his second affidavit.

### 2. The Photographs

Cintron argues that even without his second affidavit, the photographs of the physical evidence created a material dispute of fact about whether the police saw the gun in plain view before they frisked him. But the photographs of the jacket, which demonstrate that the gun could fit completely within a buttoned pocket if the person wearing the jacket was standing upright, do not establish that Trooper Gaudet could not have seen the gun sticking out of the top of the pocket when Cintron was draped across the backseat and then roused from the car by Sergeant Deyermond. The photographs do not create a material dispute of fact.

### CONCLUSION

Even considered cumulatively, Cintron's evidence was insufficient to demonstrate that material facts were in dispute and that he was entitled to an evidentiary hearing on his

-15-

motions.  Without credible evidence contradicting Trooper Gaudet's consistent account that he saw the gun in plain view, the district court did not abuse its discretion in denying an evidentiary hearing on Cintron's motion to reconsider and second motion to suppress.

The judgment below is **affirmed**.