# United States Court of Appeals
## For the First Circuit

No. 21-1365

UNITED STATES,

Appellee,

v.

SEBASTIAN BATISTA, a/k/a Jonathan,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Douglas P. Woodlock, U.S. District Judge]

Before

Barron, Chief Judge,
Lynch and Thompson, Circuit Judges.

Robert L. Sheketoff, with whom Sheketoff & O'Brien was
on brief, for appellant.
Randall E. Kromm, Assistant United States Attorney, with
whom Rachael S. Rollins, United States Attorney, was on brief, for
appellee.

April 25, 2022

**LYNCH**, **Circuit Judge**.  Sebastian Batista appeals from his conviction of possession with intent to distribute 40 grams or more of fentanyl.  He contends that the district court erroneously denied his motion to suppress evidence seized during a stop and warrantless search of his vehicle.  We find that the stop and search were lawful because law enforcement had probable cause to believe Batista was committing a crime when they stopped his vehicle and affirm.

## I.

On February 28, 2019, law enforcement, including Special Agents James Cryan and Tyler McNally from the Drug Enforcement Administration ("DEA") and Detective Jason Ferranti of the Waltham Police Department, arrested a target in their fentanyl trafficking investigation.  Prior to his arrest, the target had sold over 150 grams of fentanyl to undercover law enforcement.  The target agreed to become a cooperating witness ("CW") and to identify his drug supplier.  The CW referred to his supplier as "Jonathan" and had a telephone number to contact him.

That evening, the CW placed two recorded calls to his supplier at Special Agent Cryan's direction, and Special Agent Cryan monitored the CW's side of the conversation in real time.  In the first call, at 6:28 pm, the CW asked "Jonathan" to supply him 200 grams of fentanyl and "Jonathan" responded by asking where the fentanyl he had given the CW the day before was, to which the

- 2 -

CW replied that it was sold. The CW called "Jonathan" again at 6:41 pm, and "Jonathan" asked, "That guy [presumably, the buyer of the previous day's fentanyl], he's a good guy?" and the CW replied, "Yeah, he's a good guy and he wants more, so I told him, yeah." "Jonathan" agreed to sell the CW the requested fentanyl. He and the CW agreed to meet "there," which the CW took to mean their usual meeting place on Pine Vale Road in Waltham. The CW told Special Agent Cryan that his supplier would expect to see the white van owned by the CW's drug trafficking partner at the meeting location.

The meeting place was a low-traffic residential neighborhood street near the CW's residence. The CW rode in a law enforcement vehicle with Special Agent Cryan and Detective Ferranti to a predetermined location away from the meeting place. At 8:19 pm, Special Agent Cryan directed the CW to place a recorded call to his supplier to request an estimated time for the drug deal. When "Jonathan" picked up, he said he was on his way and would be there in 25 minutes. Special Agent Cryan, Detective Ferranti, and the CW drove their car to a side street with a view of the meeting place and parked.

Other law enforcement officers drove the white van which was known to "Jonathan" as belonging to the CW's drug trafficking partner to the meeting place. At around 9:00 pm, the officers were driving the white van on Hardy Pond Road in the direction of

Trapelo Road, and a black Jeep Cherokee passed them going in the opposite direction. "Jonathan" then called the CW and they both confirmed they were at the meeting place.[1] "Jonathan," apparently believing the CW was in the white van, called again and told the CW that the white van was being followed and hung up abruptly. Other officers observed the Jeep make a U-turn and speed off in the direction of Trapelo Road shortly thereafter.

Law enforcement stopped the Jeep at the intersection of Pine Vale Road and Trapelo Road. With their guns drawn, two officers approached the Jeep and ordered the driver, later identified as Batista, out of the car. A short while later, Special Agent Cryan, driving the car the CW was in, pulled up within a few feet of Batista, and the CW said, "that's him," to which the agent replied, "Who?", and the CW responded, "that's Jonathan." Special Agent Cryan reported the identification by radio to all of the officers onsite.

Law enforcement searched the Jeep, recovering 200 grams of fentanyl in a compartment under the driver's seat.

In their affidavits, Detective Ferranti and Special Agent McNally attested that the vehicle was searched after the CW identified Batista. The prosecution provided discovery to Batista's defense counsel concerning statements made by the CW,

---

[1]     This call was not recorded because of its short duration.

including that "when he made his identification of the defendant as his drug supplier on the night of the defendant's arrest, the law enforcement officers were already searching the defendant's vehicle."  From this, Batista contends that the officers may have searched the Jeep before the CW identified him, and that the government did not sufficiently establish that the identification took place before the search.  For reasons explained below, our holding does not rest on the timing of the identification.

## II.

Batista was indicted on one count of possession with intent to distribute 40 grams or more of fentanyl on June 12, 2019.  On November 5, 2019, Batista filed a motion to suppress the evidence obtained as a result of the February 28 stop and search.  Later that month, he obtained new counsel.  On January 14, 2020, he filed a second motion to suppress the fruits of the February 28 stop and search.  He argued that the stop where he was pulled over and ordered out of the car was a de facto arrest, for which law enforcement would have needed probable cause.  He also moved for an evidentiary hearing.  In an attached affidavit, Batista attested that he was ordered from his vehicle at gunpoint after being pulled over, that an officer told him that his license plate was not valid, and that he heard one officer tell another that he thought they had pulled over the wrong person.  The district court heard

argument on these motions on March 27 and April 2, 2020 but did not hold an evidentiary hearing.

The district court denied Batista's motions to suppress in a memorandum and order on July 9, 2020.  It first concluded that there were no inconsistencies between the government's version of events and Batista's, though Batista alleged additional facts.  Of the additional facts Batista alleged, the district court concluded only the contention that he had overheard an officer say they might have stopped the wrong person was "potentially material."

The district court found that the stop of the Jeep was not a de facto arrest but a <u>Terry</u> stop, which requires law enforcement to have only a reasonable suspicion, and law enforcement had at that point "at least" a reasonable suspicion that Batista was dealing drugs.  The district court then found the search of the car was appropriate under several exceptions to the warrant requirement: the automobile exception, because there was probable cause to believe there was contraband in the car; as a search incident to arrest, because law enforcement had probable cause to believe that the car contained drugs; and under the doctrine of inevitable discovery, because, even if law enforcement lacked probable cause to believe the car contained contraband, the drugs would have eventually been discovered when the car was towed incident to Batista's arrest.

At a bench trial on November 4, 2020, Batista was found guilty, and he was subsequently sentenced to 63 months' imprisonment. This appeal followed.

### III.

For a district court's denial of a suppression motion, we review legal conclusions de novo and factual findings for clear error. See United States v. Brown, 621 F.3d 48, 55 (1st Cir. 2010). "[T]he decision of whether to conduct an evidentiary hearing is left to the sound discretion of the district court. On appeal, our review is for an abuse of that discretion." Id. at 57 (citation omitted). The denial of a motion to suppress may be affirmed for any reason apparent from the record. See United States v. Maldonado-Peña, 4 F.4th 1, 22 (1st Cir. 2021).

Batista makes two arguments. First, he argues that the district court abused its discretion in failing to hold an evidentiary hearing on his motion to suppress. This is because, he contends, among other reasons, he did not have personal knowledge of material facts that law enforcement relied on in order to justify the stop. He argues that as a result of this lack of personal knowledge he cannot make the requisite threshold showing for an evidentiary hearing that material facts are in dispute, which, if resolved in his favor would entitle him to relief. See United States v. Cintron, 724 F.3d 32, 36 (1st Cir. 2013). Most importantly, he argues, he does not have personal knowledge of

when the CW identified him, and whether it occurred before or after the police searched the vehicle.  Second, Batista argues that even if an evidentiary hearing is not warranted, the district court erred in denying the motion to suppress because the record shows that Batista was de facto placed under arrest without probable cause.

This case, however, does not turn on these arguments. As Batista conceded at oral argument, if there was probable cause for law enforcement to believe he was committing a crime when he was pulled over, there was no error in denying the motion to suppress.

"'[P]robable cause is a fluid concept -- turning on the assessment of probabilities in particular factual contexts', and as such 'must be evaluated in light of the totality of circumstances.'"  United States v. Martinez-Molina, 64 F.3d 719, 726 (1st Cir. 1995) (first quoting Illinois v. Gates, 462 U.S. 213, 232 (1983), and then quoting United States v. Torres-Maldonado, 14 F.3d 95, 105 (1st Cir. 1994)).  To establish probable cause, the government "need only show that at the time of the arrest, the facts and circumstances known to the arresting officers were sufficient to warrant a prudent person in believing that the defendant had committed or was committing an offense."  Id.

The government asserts that the officers had probable cause when they stopped Batista's vehicle.  Batista emphasizes

that the district court only found that there was a reasonable suspicion for the stop and argues that the circumstances surrounding the stop did not add up to probable cause, particularly because the officers did not have information beforehand about what vehicle Batista would be driving.

The officers here had reason to credit the CW's statements about his dealings with Batista. As we recognized in United States v. Vongkaysone, when an informant "ha[s] been caught dealing in drugs, it [is] to his advantage to produce accurate information to the police so as to qualify for the leniency he [seeks]." 434 F.3d 68, 74 (1st Cir. 2006). In this case, the CW had been arrested in a fentanyl trafficking investigation and agreed to cooperate. An informant's credibility is further bolstered when the informant incriminates himself, see id. (citing United States v. Principe, 499 F.2d 1135, 1137 (1st Cir. 1974)), as the CW here did in revealing his history of purchasing drugs for resale from Batista.

The CW's recorded calls with Batista evidenced a history of prior drug dealing. In the first call, Batista asked the CW where the fentanyl he had given him the previous day had gone. Batista and the CW were able to arrange a meeting for a drug sale by referring to the meeting place simply as "there," suggesting prior communication and meetings. In the calls from the meeting place, Batista apparently recognized the white van, which the CW

- 9 -

said his supplier knew belonged to the CW's drug trafficking partner. These factors gave law enforcement ample reason to believe that the CW was on the phone with his supplier and that the drug deal would transpire as the CW told them it would. See id. (noting that recorded phone calls "between [the informant] and an individual who appeared to recognize him and eventually agreed to sell him drugs [at a specified time and place] . . . . strongly supported the belief that [the informant] was indeed in touch with [his supplier] and that the arranged drug deal was as represented."). It was apparent from the content of the recorded calls that Batista believed that he was supplying drugs to the CW so that the CW could resell them, and that he had supplied drugs to the CW in the past for this purpose.

Batista's presence at the meeting place identified by the CW around the time that the drug deal was set to take place also gave the officers reason to think that he was there to sell drugs to the CW. In United States v. Garcia, this court found that probable cause was established in part because an informant "told officers that his source was roughly ten minutes away, and then roughly ten minutes later the [defendant's vehicle] pulled in front of the house." 982 F.3d 844, 846 (1st Cir. 2020). The meeting place in Waltham was a low-traffic residential neighborhood, and the meeting took place at around 9:00 pm, so it was unlikely that the Jeep was in the area for an unrelated reason.

Moreover, Batista called the CW to say that he was in the area when he passed the white van that the CW said his supplier would recognize as belonging to the CW's drug trafficking partner.

It is true that nothing in the record suggests that law enforcement knew what kind of car Batista would drive to the meeting place. Cf. Garcia, 982 F.3d at 845 (noting that the informant "told law enforcement that the supplier had on occasion used a Dodge truck or silver truck to deliver drugs."). But law enforcement had many reasons to believe that the drug supplier the CW spoke to in the recorded phone calls was the man in the Jeep. In addition to the Jeep's presence at the low-traffic meeting place at the appointed time, the supplier called the CW to say that he was in the area right after the Jeep passed the white van, then called the CW again to tell him that the white van was being followed, at which point the Jeep made a U-turn and sped away from the scene.

In sum, law enforcement had probable cause to believe that Batista was in possession of drugs with an intent to sell them to the CW when they pulled him over on February 28. The totality of the circumstances -- including the CW's apparent history of dealings with his supplier, the recorded phone calls arranging the drug deal, Batista's presence at the meeting place, and the way that the Jeep's movements lined up with the supplier's phone calls to the CW during the would-be drug deal -- would give

a reasonable officer probable cause to believe that the driver of the Jeep was the drug supplier, and that he possessed fentanyl that he intended to sell to the CW for resale.

We need not consider whether Batista was placed under de facto arrest when he was ordered out of the vehicle, as the officers had probable cause to believe he was committing a crime at that point, so, if it was an arrest, it was a lawful one. See United States v. Raspberry, 882 F.3d 241, 246-47 (1st Cir. 2018) ("Probable cause is a prerequisite not only for a formal arrest but also for a de facto arrest."). Similarly, because there was probable cause in the record to believe there were drugs in Batista's car at the time of the stop whether or not the CW identified him before the search took place, no evidentiary hearing was necessary.

## IV.

The judgment of conviction is affirmed.