UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

United States of America

    v.                                  Criminal No. 18-cr-132-JD
                                          Opinion No. 2021 DNH 063

Laveneur Jackson

# O R D E R

Defendant Laveneur Jackson moves for reconsideration of the court's order denying his motion to suppress. The government objects.

## Standard of Review

"A district court may grant a motion for reconsideration 'if the moving party presents newly discovered evidence, if there has been an intervening change in the law, or if the movant can demonstrate that the original decision was based on a manifest error of law or was clearly unjust.'" United States v. Cintron, 724 F.3d 32, 36 n.5 (1st Cir. 2013) (quoting United States v. Allen, 573 F.3d 42, 53 (1st Cir. 2009)); cf. LR 7.2(d). "The granting of a motion for reconsideration is 'an extraordinary remedy which should be used sparingly.'" Palmer v. Champion Mortg., 465 F.3d 24, 30 (1st Cir. 2006) (quoting 11 C. Wright, A. Miller & M. Kane, Federal Practice and Procedure

§ 2810.1 (2d ed. 1995)).  "Unless the court has misapprehended some material fact or point of law, such a motion is normally not a promising vehicle for revisiting a party's case and rearguing theories previously advanced and rejected."  Id.

## Discussion

Jackson argues that the court's decision denying his motion to suppress was based on manifest errors of fact or law.  Specifically, he contends that the court erred in rejecting his arguments that law enforcement did not have reasonable suspicion to stop and question him on January 2, 2017, and that he was subjected to a custodial interrogation without being provided sufficient warnings about his rights.  The government objects to reconsideration on the ground that Jackson merely rehashes arguments that the court already considered and rejected.

A.    Terry Stop

In his motion to suppress, Jackson argued that law enforcement lacked reasonable suspicion to stop him pursuant to Terry v. Ohio, 392 U.S. 1 (1968).  The court found that "[b]ased on the information they gathered before stopping Jackson, Agent Cook and Officer Barter had reasonable suspicion that an illegal straw purchase of firearms was occurring at Riley's Sport Shop on January 2, 2017, and that Jackson was involved."  Doc. 152 at

2

12. The court accordingly concluded that the stop and questioning of Jackson did not violate the Fourth Amendment. Id.

In support of reconsideration, Jackson reiterates arguments that the court considered and rejected in denying his motion to suppress. For example, the court considered and rejected Jackson's argument that reasonable suspicion was lacking because not every tip about suspicious activity turns out to be criminal activity as well as his argument that the conversation between Keenan and Soule-Jensen was ambiguous as to implicating Jackson. Reconsideration is not warranted on any of those grounds. See Palmer, 465 F.3d at 30.

Jackson also contends that the court overlooked or misconstrued certain facts in finding that the government officers had reasonable suspicion to stop and question him on January 2, 2017. In its order denying Jackson's motion to suppress, the court found that "[t]he employee [who called the ATF] was also known to both Agent Cook and Officer Barter from previous reports of suspicious firearm-purchasing activity and had previously provided reliable information." Doc. 152 at 14. Jackson contends that only Officer Barter, and not Agent Cook, knew the Riley's Sport Shop employee who reported concerns about a suspected straw purchase on January 2, 2017.

3

Regardless of whether Agent Cook knew the reporting employee beforehand, there is no dispute that Officer Barter did, which, as the court found, enhanced the reliability of the employee's report. United States v. Barnes, 506 F.3d 58, 62-63 (1st Cir. 2007) (stating that the focus of the court's inquiry is on the collective knowledge possessed by the officers involved in the investigation). Furthermore, there is no dispute that Agent Cook met with the reporting employee before stopping Jackson, which further enhanced the report's reliability. Doc. 152 at 14 ("The employee, however, did not call anonymously, and Agent Cook spoke to the employee in person, which enhances the reliability of the information. . . . Furthermore, while the information from the reporting employee was secondhand, Agent Cook further investigated and corroborated the report before stopping Jackson."); see Florida v. J.L., 529 U.S. 266, 270 (2000) (stating that a "tip from a known informant whose reputation can be assessed and who can be held responsible if her allegations turn out to be fabricated" is more trustworthy than an anonymous tip).

Additionally, during the hearing on the motion to suppress, Agent Cook testified that he knew Chris Crosby, who had called the ATF, as well as Lee Adams, who had initially reported what he believed to be suspicious activity to Crosby. Doc. 166 at 74 ("I had talked to [Chris Crosby] a few times [before January 2,

4

2017]. . . . Whenever it came time to get surveillance video, it was always Chris Crosby who knew how to get the video. . . . I think I probably talked to [Lee Adams] a few times, nothing that sticks out."). Accordingly, the court did not misapprehend the testimony.

Next, Jackson argues that the court failed to acknowledge that an illegal straw purchase did not, in fact, take place on January 2, 2017. He contends that any suspicion that officers could have had about an illegal purchase therefore dissipated before the government officers stopped and questioned him. The evidence at the suppression hearing established that law enforcement had reasonable suspicion to suspect that a straw purchase was occurring on January 2, 2017. That the officers interrupted a suspected straw purchase before it could be completed did not dissipate their reasonable suspicion that Jackson was involved in criminal activity. See, e.g., United States v. Hensley, 469 U.S. 221, 226 (1985) (observing that Terry stops can be valid when criminal activity is "imminent" or "ongoing" and holding that Terry stops can also be valid to investigate "completed" criminal activity); United States v. Ferreira, 821 F.2d 1, 4 (1st Cir. 1987) (stating that Terry stops serve government interests in "crime prevention" and "crime resolution"). For the foregoing reasons, Jackson has not

5

demonstrated any ground for reconsideration of the court's order denying his motion to suppress based on an invalid Terry stop.

### B.    Custodial Interrogation

Additionally, in his motion to suppress, Jackson argued that he was subjected to a custodial interrogation on January 2, 2017, and that evidence obtained as a result of that interrogation should be suppressed because the officers failed to provide Jackson appropriate warnings under Miranda v. Arizona, 384 U.S. 436 (1966).  After weighing the relevant facts, the court concluded that Jackson was not in custody during the questioning.  In his motion for reconsideration, Jackson argues that the court erred in weighing and assessing the facts.  Because the court has already considered and rejected the same arguments in denying Jackson's motion to suppress, reconsideration is unwarranted.  See Palmer, 465 F.3d at 30.

Jackson also contends that the court misconstrued the hearing testimony by finding that Officer Dupuis's cruiser was not parked in a way that blocked the Audi from leaving the Riley's Sport Shop parking lot.  Specifically, the court found "credible Agent Cook's and Officer Barter's testimony that the cruiser was not parked in a way that blocked the blue Audi from leaving" and that "Officer Dupuis testified that he did not

6

remember where he parked the cruiser, but indicated that he did not believe that he blocked the Audi." Doc. 152 at 6 n.5. Jackson contends that Officer Barter testified that he did not remember whether the Audi was blocked and that Officer Dupuis did not have a recollection about where he parked the cruiser.

The court, however, found that whether the Audi was blocked was immaterial to its conclusion that Jackson was not subjected to custodial interrogation because "even under Jackson's version of events, it was the Audi that was blocked by the cruiser; Jackson himself was never physically restrained. Furthermore, Keenan and Soule-Jensen drove Jackson to Riley's Sport Shop and the Audi was not his car." Doc. 152 at 18; United States v. Hughes, 640 F.3d 428, 436 (1st Cir. 2011) (affirming district court's decision finding that the defendant was not in custody and noting the significance that "no meaningful physical restraint was applied to the defendant"). Jackson provides no argument that suggests this finding should be reconsidered or was based on a manifest error of fact or law.

In any event, the court's finding that the Audi was not blocked by the cruiser is not manifestly incorrect. Agent Cook testified that the cruiser was not blocking the Audi. Doc. 166 at 70, 100-01 ("Q. Did the marked Hooksett vehicle block the Audi in any way? A. No, it didn't."). Officer Barter did not remember that the cruiser was parked in a way that blocked the

7

Audi.  On direct examination, Officer Barter testified that, although he was not sure exactly where the cruiser was parked, he remembered that the cruiser was parked a couple of parking spots away from where he, Jackson, and Soule-Jensen were standing, which was near the front (Soule-Jensen) and back (Jackson) of the Audi.  See id. at 26-27 ("I remember the cruiser being a couple parking spots away, but I don't remember exactly where it was.  I believe it was more towards the road area, but I can't remember exactly.").  When asked if the cruiser was blocking the Audi from leaving the parking lot, Officer Barter responded, "Not that I remember."  Id. at 27.  On cross-examination, however, Officer Barter indicated that he did not know whether or not the cruiser blocked the Audi.  Id. at 48-49 ("Q. All right.  And he parked the cruiser so that it blocked the Audi from leaving, right?  A. I don't remember where he parked the cruiser.  I don't remember that, but I don't remember for sure where that cruiser was positioned.  Q. Okay. So you're not disputing that. You just don't remember if it was blocking the Audi from leaving or not?  A. Correct.  I do not remember that.").  Officer Dupuis testified that, while he did not recall specifically where he parked the cruiser, he did not believe it would have blocked a vehicle in the parking lot.  Id. at 114 ("Q. Do you recall if you parked your cruiser in a way that would have blocked the route of a vehicle in the parking

8

lot?  A. It's not written in my report so I can't – I don't believe I did.").  Considering all of the testimony, Jackson has not demonstrated that the court manifestly erred by finding that the Audi was not blocked in by the cruiser.

For the foregoing reasons, Jackson has not demonstrated any manifest error of law or fact in the court's order denying his motion to suppress.

## Conclusion

Jackson's motion for reconsideration (doc. no. 159) of the court's order denying in part his motion to suppress is denied.

SO ORDERED.


_____
Joseph A. DiClerico, Jr.
United States District Judge


March 30, 2021

cc:   Simon R. Brown, Esq.
      Anna Z. Krasinski, Esq.
      Seth R. Aframe, Esq.